# PENNSYLVANIA.

———❖———

WESTERN DISTRICT, SEPTEMBER TERM, 1849.

PITTSBURGH.

| | |
|---|---|
| 12 | 15 |
| 20 SC ⁰ 54 | |

| | |
|---|---|
| 12 | 15 |
| c205 | ¹243 |
| 12 | 15 |
| f 211 | ⁶580 |

The Heirs and Legal Representatives of WILLIAM AITKIN, MARY NELSON, and SUSAN DICKSON, Devisees under the Will of JOHN AITKIN, deceased, v. THOMAS B. YOUNG.

1. The record and depositions, in a proceeding under the Act of 10th March, 1818, wherein the proof of the contract of a decedent to sell lands has been adjudged sufficient, is receivable in evidence, not as conclusive, but as some proof of the facts set forth in the petition.

2. The record of such proceeding is evidence against heirs or devisees of the decedent, who were not actually parties to it, but who were virtually represented by his executors or administrators, to whom notice had been directed to be given.

3. In order to constitute a good title to land by parol, the possession must be contemporaneous with, or immediately consequent on, the contract and in pursuance of it; and the proof of these facts should be clear and precise.

4. Possession before and at the time of the supposed contract, and the mere continuation of that possession, cannot be considered as taking possession under such contract.

5. To exclude the operation of the Statute of Frauds in such case, the possession of the vendee should be notorious and exclusive, and taken in pursuance of the contract.

6. When evidence, competent and material at the time it is received, becomes, by a turn in the case, incompetent and immaterial, and no request is made to the Court to instruct the jury to disregard it, it affords no ground for reversal.

ERROR to the District Court of Allegheny.

*Sept.* 10. This was an action of ejectment brought by the heirs of William Aitkin, of Mary Nelson, and Susan Dickson, who were

(15)

devisees of the property in dispute under the will of John Aitkin, against James Mehaffy and others, tenants of Thomas B. Young, who appeared and made defence.

Both parties derived title from John Aitkin, deceased, who was seised in fee of the premises, and who by his will, dated in 1825, proved June 7, 1828, devised the same to his wife Janet for life, with one-third to her in fee, the remaining two-thirds in fee to his brother William and his sisters Mary Nelson and Susan Dickson, who are all dead, leaving heirs, the plaintiffs in this action. This testator died in May, 1828, and his widow in March, 1846. The writ was served 15th March, 1848.

Thomas B. Young claimed title by virtue of an alleged verbal agreement, made between himself and John Aitkin on 21st December, 1846, by which the said John agreed to give to him a perpetual lease of the premises, reserving an annual rent of 150 dollars, payable quarterly. He also relied upon the statute of limitations.

Upon the trial, the defendant offered in evidence the petition of himself, by his father and next friend John Young, to the Court of Common Pleas, to receive proof of a contract for a perpetual lease of the premises made between John Aitkin and John Young on behalf of said Thomas, the said Aitkin having deceased without executing the same, together with the proof adduced before the said Court in support of the said petition, and the decree of the said Court thereon, adjudging the proof to be sufficient, &c., the whole constituting the Record of No. 437, Aug. T., 1828, in the C. P. of Allegheny. To the admission of this evidence the plaintiffs excepted, and it constituted the first bill of exceptions.

The defendant then offered receipts by Janet Aitkin for ground-rent of the premises, the rent reserved by the unexecuted contract, which, being admitted under the plaintiffs' exception, constituted their second bill.

The defendant then offered to prove that, after he entered into possession of the property under the supposed perpetual lease, he made valuable improvements thereon, and the admission of evidence to that effect was the subject of the third bill.

A full statement of the case is contained in the charge of the Court below. The following points were presented to that Court by the plaintiffs:

.1. That possession before and at the time of the supposed con-

tract, and the mere continuation of that possession, cannot be considered as taking possession under said contract.

2. In order to constitute a good title by parol, the possession must be contemporaneous with, or immediately consequent on the contract and in pursuance of it; and that these facts must be established by clear, precise, and satisfactory evidence.

3. There is no evidence of the precise date of the contract, or of the time when Thomas B. Young assumed ownership over the property, and in this the defendant's evidence has failed.

4. That in order to exclude this case from the operation and influence of the statute of frauds, the possession of Thomas B. Young must have been notorious and exclusive, and taken in pursuance of the supposed contract.

HEPBURN, President, charged the jury as follows:

"The plaintiffs claim under the will of John Aitkin, dated 10th Dec., 1825; and proved 7th June, 1828. By this will he devises to his wife Janet, all his real estate for life and one-third thereof in fee; the remaining two-third parts, after the decease of his wife, he devises to his brother and sisters, William Aitkin, Mary Nelson, and Susan Dickson. The widow died in 1846. The devisees above named are also dead, leaving the plaintiffs their children and heirs, to whom their right in the lot in question descended and came. The plaintiffs, therefore, are entitled to a verdict for two undivided third parts of the lot in question, unless the defendants have shown a better title, or that they have right to retain the possession.

"The defendants' claim to the lot in question originated as far back as 1st April, 1816. On that day John Aitkin, the plaintiffs' ancestor, executed a lease to John Young, the father of the defendant, for seven years, with the privilege to remain one year longer, at the annual rent of $150, and with a covenant on the part of Aitkin that he would convey the lot to Young in fee, on his paying to him the sum of $2500, at any time previous to 1st April, 1824. But if the money was not paid, Young was then to surrender the lot to Aitkin, with all the improvements made thereon.

"Young did make valuable improvements upon the property previous to 1st April, 1824, and on that day had wholly failed to pay the purchase-money, in consideration of which Aitkin was to have conveyed to him the title of the property. Aitkin, however, forbore to take possession of the property, and from the testimony we may infer that for two years and upwards, negotiations were going on between the parties, for the purpose of enabling Young to save

the forfeiture of his improvements and obtain the title to the pro-
perty. He was in arrears not only for the purchase-money, but
also for the annual rent; and a witness says that a year and a half
or two years before Aitkin's death (which took place in May, 1828),
he told him that he had made a satisfactory arrangement with
Young; that there had been a compromise; he had forgiven him
part of the rent, and the balance had been fully satisfied; that he
was now to make a perpetual lease to Thomas B. Young, the son
of John, at the request of the mother, the said John having become
intemperate, that the property might be preserved to the family,
on an annual ground-rent, the amount of which the witness does
not recollect, but which we are informed by Aitkin's receipt in
evidence, and other testimony, was $156 per annum.

"You will observe that Young's first lease expired in April, 1824.
The alleged agreement for the perpetual lease was not entered into
until 1826, and the will under which the plaintiffs claim was
executed in 1825, after the termination of the first lease, and
before that now set up as a defence was agreed upon.

"At the time the will was executed, therefore, Aitkin was cer-
tainly the owner of the lot, and if you believe that the alleged
perpetual lease was agreed upon, the argument that Aitkin would
not have devised the lot, if he owned only the ground-rent, may not
be entitled to much consideration.

"But did Aitkin agree to give to Thomas B. Young a perpetual
lease?

"The principal evidence upon this subject is found in the pro-
ceedings of the Court of Common Pleas, at August T. 1828. John
Young, on behalf of Thomas B. Young, under the provisions of the
Act of 10th March, 1818 (Dunlop, 274), presented his petition to
that Court, setting forth that a parol contract had been entered into
between the said John Aitkin, then deceased, and the said Thomas
B. Young, on the 21st December, 1826, for a perpetual lease of the
lot now in dispute, at the annual rent of $156, and prayed the
Court to receive proof of the said contract, &c.

"The Court did receive the proof of the said parol contract,
adjudged the same to be sufficient, and directed said adjudication
to be endorsed upon and annexed to said petition, and to be certi-
fied by the Prothonotary and recorded. The adjudication and
proof were duly recorded, and there the matter rests. The Act
referred to seems to make it the duty of the executors or adminis-
trators of the deceased grantor to take the next step and petition

the Court for leave to make the deed to the purchaser according to the contract. This was never done, but it is clearly in evidence that the possession of the property was in the Youngs previous to Aitkin's death, and it is a fact for you to determine whether they were in under the alleged parol agreement or not? We have a receipt from Aitkin himself, dated 2d July, 1827, for one quarter's rent due on the 1st of that month, at the increased rent of $39 per quarter: see also the testimony of Andrew L. Kerr, Luke Loomis, &c. The evidence also shows that from the decease of John Aitkin, to the decease of the widow, Young held the possession, and that the ground-rent has been fully paid.

"What the precise character of this Common Pleas record is— whether we should consider it as conclusive of the facts stated in the petition—and whether it is the judgment of a Court of competent jurisdiction, that the case is not within the statute of frauds and perjuries—are perhaps questions of no great difficulty, yet I do not think it necessary to decide them in this case.

"We cannot mistake, I think, in allowing to the proceeding the effect which the Act of Assembly gives it. The Act says, "said petition and adjudication, as well as a copy of the record thereof, *shall be evidence of the facts set forth in said petition.*" Then it is evidence that on 21st December, 1826, John Aitkin agreed to convey by deed or perpetual lease, the lot in question to Thomas B. Young, the defendant, at the annual ground-rent of $156.

"The next question is, did Thomas B. Young, or those claiming under him, take possession of the property at or about the time of the alleged parol contract?

"John Young certainly held the possession previously; the reason the contract was made in the name of Thomas was stated, and we find rent at $39 per quarter, paid in July, 1827, to John Aitkin himself by Kerr, who alleges that his lease was from Thomas B. Young, by his agent John Young. You have also the testimony of M'Ilwain, &c., on this subject, and the undoubted fact that Thomas B. Young held the possession during the time the widow of John Aitkin received the annual rent, and until her decease.

"The defendant's title then being upon this record by the proceedings in the Common Pleas, and the record thereof, if the possession was in accordance with the agreement, it was notice to all the world of the extent of defendant's claim.

"Under these facts the defendant contends that if the plaintiffs acquiesced in his title for upwards of twenty-one years, and have

seen valuable improvements made without notice or complaint, and without an effort to reverse the judgment of the Court as to the sufficiency of the evidence of the parol contract, they are estopped from .denying the validity of the title in which they have thus acquiesced. - If the facts are as is supposed, there would certainly be very little equity in a claim thus presented after so long an interval; after the parties prosecuting it had so long encouraged and acquiesced in the opposing title.   But in this case the defendant was not entitled to the property until after the decease of the widow, and that they were bound to do any act in her lifetime, to prevent the proceedings of the defendant, in failure of which they would be prejudiced, I am not prepared to admit, and as the case will not turn upon this point, it is unnecessary to decide it.

"The plaintiffs contend that there was no such change of the possession from John to Thomas B. Young, as was sufficient to take the case out of the statute of frauds and perjuries.

"The facts are for you—when did Thomas B. Young take possession of this property?   Was it on the 21st December, 1826, or when was it?

"If he took possession on or about that day, and the possession was changed from John to Thomas, and a lease made in Thomas B. Young's name, as Kerr says was the case in 1828, and proof of this parol agreement was made in the Court of Common Pleas, as before stated, and the judgment of the Court, that the proof was sufficient, has been acquiesced in by the plaintiffs, and those whose title they claim, from that time till the commencement of this suit, and the ground-rent regularly paid for upwards of twenty-one years, then I think the case is not within the operation of the statute of frauds and perjuries, and if the evidence of the contract satisfies you of its existence, it is binding on the parties, and the defendant is entitled to your verdict.   If, however, the contract is not sufficiently proved, and the possession was not taken by Thomas B. Young, or those representing him, at or before the time of the alleged contract, then. the plaintiffs are entitled to your verdict, so far at least as this question is concerned.

"But is not the plaintiffs' recovery barred by the statute of limitations?

"This suit was brought 13th March, 1848.   Did Thomas B. Young, or those holding under and for him, take actual possession of the lot under this claim and agreement for a perpetual lease, on or before 12th March, 1827?   If they did, how was that possession

taken and held? Was it under an adverse claim, or a claim hostile to all the world? That is to say, did Thomas claim to be the owner of the property in fee, subject only to the payment of the ground-rent of $156 per annum, and that Aitkin and no other man had right or power to dispossess him, or interfere with him so long as the ground-rent was punctually paid? If he did, and that possession was actual, continued, and hostile, the statute of limitations is a bar to the plaintiffs' claim, and the defendant is entitled to your verdict.

" The possession of Thomas B. Young, or those representing him, must have been actual, continued, and hostile, for twenty-one years. It must have commenced, therefore, previous to 13th March, 1827 —if you find the facts to be so, your verdict will be for the defendant—if not, for the plaintiffs.

" The statute of limitations begins to run from the time the right of action or right of entry accrues; and here it is suggested that the tenants in remainder could not be bound, as they had no right of entry until after the termination of the life-estate. But when the statute begins to run it never ceases. The entry of Thomas, if made at all under this title, was made in the lifetime of John Aitkin, to whom rent was paid. If so, the statute began to run in his lifetime, and did not cease at his decease, the defendant therefore can claim no benefit from his situation as tenant in remainder.

" The plaintiffs' first three points are answered in the affirmative. The fourth presents a question of fact for the jury, and not for the Court to determine."

The verdict and judgment were for the defendant. In this Court the following assignment of errors was made:

1. The Court erred in admitting the record in No. 437, August Term, 1828, and telling the jury that it was evidence of the facts therein contained.

2. The Court erred in admitting in evidence receipts of Janet Aitkin to Thomas B. Young for ground-rent, falling due after the death of John Aitkin.

3. The Court erred in admitting evidence of improvements made on the property by John Young, the father of Thomas B. Young, under the lease from John Aitkin to him, dated April 20, 1816. *Prout* evidence of John M'Ilwaine.

4. The Court erred in charging the jury that the possession of Thomas B. Young was sufficient to take the case out of the opera-

tion of the statute of frauds and perjuries, and in answering the plaintiffs' first, second, and third points.

5. The Court erred in charging the jury that the plaintiffs' claim was barred by the statute of limitations.

*G. P. Hamilton*, for the plaintiffs in error.

1. The record is not evidence on the principle "*res inter alios acta.*" We were not parties to it—had no notice: could not examine witnesses—and could not appeal. We were not in privity of estate with Janet Aitkin, the respondent there—we hold directly from John Aitkin, and not through her. But the decree was a nullity for want of jurisdiction—the petition exhibits only an executory agreement, within the statute of frauds, &c.

The Court should have withdrawn this evidence from the jury: the facts proved were insufficient in law to constitute a valid agreement under the statute.

The proceedings are imperfect, never having been conducted to a final decree under the act of 1818.

2. We claim the ground, not the rent. Mrs. A. was a stranger to us in blood and estate, and we cannot be affected by her acts.

4. The alleged agreement was made in December, 1826, when John Young was residing on the premises, where he had been residing from the date of the first agreement. Thomas was then a child, residing with his father, and there was no change of the possession from John to Thomas. Pugh *v.* Good, 3 W. & S. 56; Brawdy *v.* Brawdy, 7 Barr, 157.

5. Thomas B. Young's possession was a mere continuation of the original possession of his father, which was not adverse—his possession was not contemporaneous with and in pursuance of the parol contract for a perpetual lease.

*Loomis* and *McCandless*, contrà.

1. The act of 1818 did not require notice to be given to Aitkin's heirs or devisees, but the Court directed it to be given to his executors, which, it must be presumed, was done. The regularity of the proceeding, however, cannot be questioned collaterally, and cannot be revised or reversed here in this form. It was binding on the Court below. It was evidence of the contract under which we claim title, by the act of 1818; imperfect as evidence of title, but a good foundation for other evidence. As to the decree being a nullity, it is sufficient to cite Hays *v.* Shannon, 5 Watts, 550.

2. The payments to Mrs. Aitkin were in pursuance of the very terms of the contract—she held a life-estate in the premises under John Aitkin's will, and our right to continued enjoyment of the premises depended on compliance with our agreement with him to pay the rent. We had a right to show our compliance with that contract, into whose hands soever the right to receive the rent devolved.

3. By a change in the aspect of the case, after this evidence was admitted, it became immaterial.

4. The Court did not so charge the jury, as is here affirmed. On the trial below, the Court answered the plaintiffs' first, second, and fourth points affirmatively, and declined answering the third, as it involved a question of fact. It is a plain mistake of the numbers of the points, as the answers stand recorded in the charge.

5. The Court did not take the fact from the jury—the possession, its character and qualities, were left to the jury.

The opinion of this Court was delivered by

ROGERS, J.—We do not perceive that any error was committed in admitting the proceedings in the Court of Common Pleas, on the application of Thomas B. Young, to prove the contract between John Aitkin and John Young for a perpetual lease of the property in controversy. This application was made under the provisions of the Act of the 10th March, 1818, a farther supplement to the Act of the 31st March, 1792, an Act to enable executors and administrators, by leave of the Court, to convey lands and tenements contracted for with their decedents. The petition sets out a state of facts, which, if true, brought the case within the jurisdiction of the Court, and called for its interposition. The Court, on the prayer of the petitioner, directed proof of the contract to be made in open court, and ordered notice to be given to the executor of John Aitkin. Under this order proof was made of the contract, which was adjudged to be sufficient. This was received by the Court, not as conclusive, but as some proof of the facts therein contained. For this purpose we think the record and depositions were properly received. There can be no error in this, for the Act expressly says, said petition and adjudication, as well as a copy of the record thereof, shall be evidence of the facts set forth in said petition.

The Act contains no direction as to whom notice shall be given, nor does it even prescribe that any notice whatever shall be given.

But the uniform practice has been in conformity to every rule of common sense and common justice to give notice, and as the deed is directed to be made by the executors or administrators, that notice in all cases is ordered to be given to them, as the representatives of the heirs, devisees, and all parties having an interest in the premises. For some cause which has not been explained, no further proceedings were had than to prove the contract. No deed was executed and delivered by the executors. If this had been done it would have concluded the title so that its validity could not be contested in a collateral proceeding. That it is evidence for the purpose it was admitted, is clear, as the heirs and devisees, although not actually, were virtually, parties to the proceedings.

It is said that the Court erred in instructing the jury that the possession of Thomas B. Young was sufficient to take the case out of the operation of the statute of frauds and perjuries, and in answering the plaintiffs' first, second, and third points. Had the Court instructed the jury, as is alleged, that the possession of Young was sufficient to take the case out of the operation of the statute, it may be the plaintiffs in error would have some right to complain. But I do not so understand the instruction. They charge the jury correctly as to what takes the case out of the operation of the Act, leaving them to judge, on the facts in evidence, whether the requisitions of law had been complied with.

As to the plaintiffs' legal points, the Court have given an affirmative answer. They instruct the jury that possession before and at the time of the supposed contract, and the mere continuation of that possession, cannot be considered as taking possession under that contract. That in order to constitute a good title by parol the possession must be contemporaneous with, or immediately consequent on, the contract, and in pursuance of it, and that these facts must be established by clear, precise, and satisfactory evidence. And that in order to exclude this case from the operation and influence of the statute of frauds, the possession of Thomas B. Young must have been notorious and exclusive, and taken in pursuance of the supposed contract.

The charge is as favourable to the plaintiffs as they could, or at any rate did, desire. It is made in the very words of their points.

The plaintiffs further ask the Court to instruct the jury that there is no evidence of the precise date of the contract, and of the time when Thomas B. Young assumed ownership over the property, and that in this the defendant's evidence failed. The Court pro-

perly refused so to charge, because, as they truly say, it presents a
fact for the jury, and not for the Court to determine.   Had they
charged as requested it would have been erroneous, as it would be
a plain and palpable usurpation of the province of the jury.   It
is not a case where there is no evidence whatever, for there is
abundance of proof bearing on this fact; but whether it was suffi-
cient to bar the plaintiffs was a question exclusively for their
determination.   Whether their decision was right or wrong we
cannot inquire, nor have I any disposition to do so in this case,
which has very little to recommend it on the score of justice.   The
mistake as to the number of the points can make no difference, in
view of the practice of the Court, which is to read the points to
the jury, and to give them an affirmative or negative answer.   We
have no reason to apprehend that the jury were misled.   No doubt
the matter was distinctly understood at the trial.   It was a mistake
as to the number of the points, which could have no operation on
the jury.   The legal points could not be denied.   The only con-
troversy which could have arisen was that the third point assumed
the existence of a fact which the jury, and not the Court, had the
right to determine.

The fourth error is not founded in fact.   For the Court did not,
as is alleged in the point, charge the jury that the possession of
Thomas B. Young was sufficient to take the case out of the opera-
tion of the statute of frauds and perjuries, and there was no error
in answering the first three points, for the Court answer them
affirmatively, except one, which was properly referred to the jury.

But it is said there was error in admitting in evidence the receipts
of Janet Aitkin, because she was a stranger in blood and estate,
and her acts recognising the title of Thomas B. Young could not
affect them.   To this the defendant in error gives this satisfactory
answer.   That by the very terms of the contract, T. B. Young was
to pay $156 as ground-rent, *per annum,* for the premises in con-
troversy.   The rent was paid to Aitkin in his lifetime, as appears
by his receipt, in pursuance of the contract.   Mrs. Aitkin, upon
his death, succeeded, under the provisions of the will, to a life-
estate in the premises, consequently the payment of the stipulated
rent to her, during the continuance of her interest, was required
by good faith, common honesty, and the very terms of the contract.
The right of Thomas B. Young to the premises was dependent
upon his continued compliance with the terms of the contract.   And
although Janet Aitkin may have been a stranger to the plaintiffs

in blood and estate, still, that circumstance does not constitute a fatal and valid objection to evidence that shows that he has, with punctuality and fidelity, performed his agreement. Although the plaintiffs could not be affected by the acts of Mrs. Aitkin, recognising the title of Thomas B. Young, yet they might be affected by a contract of the person under whom they claimed, rendered effectual by possession and a scrupulous compliance of the other party with its terms.

Nor do I perceive any error in admitting evidence of the improvements by John Young.

At the time the evidence was admitted the plaintiffs had given no evidence of title. John Young, under whom defendant claims, was in the possession. It was therefore competent for them to show improvements made by them. It was evidence in proof of an adverse, hostile possession, under the plea of the statute of limitations. It is true, that subsequently the whole matter was so changed by the introduction of other testimony, as to render it incompetent and immaterial, and on request, the Court, no doubt, would have charged the jury to disregard it. But it being competent at the time it was received, there was no error for which the cause can be reversed. We are not called upon to be astute in reversing a cause, when we have reason to believe the testimony was immaterial and harmless.

Judgment affirmed.