# Seabury, Appellant, *v.* Fidelity Insurance Trust & Safe Deposit Company.

*Principal and agent—Real estate agent—Commissions.*

When a real estate agent who has been authorized in writing to sell a
property for a certain commission on an amount designated as the purchase
money, introduces to the vendor a purchaser who is acceptable to the vendor,
the agent has earned his commissions, although the contract entered
into by the vendor and the vendee does not contemplate any immediate
payment of money, but only payment out of mortgages to be created upon
the property, and although the contract of sale was never in fact carried
out through the failure of the purchaser to perform his part.

In an action by a real estate agent against executors to recover commis-
sions on a sale of real estate for the testator in his lifetime, where the de-
fendants allege that no contract of sale had been entered into between the
vendor and the vendee, within the meaning of the contract between tes-
tator and plaintiff for commissions, it is not proper to admit in evidence,
upon the offer of the plaintiff, a record of the orphans' court, showing a
decree of specific performance in favor of the vendee, as against the ex-
ecutors.

Argued Jan. 21, 1903.   Appeal, No. 90, Jan. T., 1902, by
plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1899,
No. 473, refusing to take off nonsuit in case of James M. Sea-
bury v. Fidelity Insurance Trust & Safe Deposit Company et
al., Executors of Andrew M. Moore, Deceased.   Before MITCH-
ELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.
Reversed.

Assumpsit to recover commissions for selling real estate.
The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were (1, 2) refusal to admit in evidence records of the orphans' court and the Supreme Court, showing decrees of specific performance against the defendants, and in favor of John J. McDevitt; (4) refusal to take off nonsuit.

*A. S. L. Shields*, for appellant.—The learned trial judge erred in refusing to admit in evidence the records of the Supreme Court and of the orphans' court in the estate of Andrew M. Moore, deceased, as proof that the agreement entered into between the defendants' testator and John J. McDevitt was an agreement of sale. Those records were conclusive evidence of that fact, because, in the first place, the proceeding in the orphans' court was essentially one in rem, and therefore binding on all the world; in the second place, the orphans' court had exclusive jurisdiction to enforce the said agreement, and therefore its decree was binding on everybody; and in the third place, even if not conclusive in the case at bar as an estoppel, the decree of the orphans' court and the decree of the Supreme Court affirming that decree, are nevertheless conclusive upon all the world, upon the principle of stare decisis: Cobb v. Burns, 61 Pa. 278; Penn v. Lord Baltimore, 1 Ves. Sen. 444; Rhoades v. Selin, 4 Wash. C. C. 715; Kolb v. Swann, 68 Md. 516; Cooper v. Reynolds, 10 Wall. (U. S.) 308; Hammer v. Griffith, 1 Grant (Pa.), 193; Shryock v. Buckman, 121 Pa. 248; Street v. Augusta Ins. & Banking Co., 12 Rich. L. (So. Car.) 13; Miller v. Foster, 76 Tex. 479 (13 S. W. Repr. 529).

Even if the records offered in evidence should be held not to be conclusive under all circumstances, of the fact that the agreement between the defendants' testator and John J. McDevitt was a binding contract of sale, they were nevertheless competent evidence of that fact, and therefore conclusive on the motion for a nonsuit, and for the purposes of this appeal: Lewis v. Nenzel, 38 Pa. 222; Wrigley v. Mahaffey, 5 Pa. Dist. Rep. 389; Canaan v. Greenswood Turnpike Co., 1 Conn. 1; Hoffman v. Coster, 2 Whart. 453.

Even if the records were properly rejected, the learned court below was still bound to hold that the agreement entered into

by the testator of the defendants with John J. McDevitt was a binding contract of sale of the Girard House property.

Since the agreement of March 20, 1897, between the defendants' testator and John J. McDevitt, was a valid and binding contract of sale, the plaintiff in the case at bar is entitled to recover the commissions stipulated in the contract of May 19, 1896, entered into with him by the defendants' testator; for, in the first place, the former agreement was a " sale " within the meaning of the latter contract; in the second place, even if it should be held not to be a technical sale, the plaintiff would be entitled to recover, since the defendants' testator had deliberately changed the terms on which the plaintiff was authorized to negotiate; in the third place, the plaintiff performed his whole duty under his contract when he brought together the parties to the agreement of March 20, 1897; in the fourth place, the agreement of March 20, 1897, being valid and enforceable, was sufficient to entitle the plaintiff to his commissions, though it was never carried into effect; and in the fifth place, as performance of that agreement was prevented by the illness of the defendants' testator, the plaintiff's position is the same as if it had been performed: Francis v. Baker, 47 N. W. Repr. 452; Micks v. Stevenson, 51 N. E. Repr. 492; Rice v. Mayo, 107 Mass. 550; Chapin v. Bridges, 116 Mass. 105; Ward v. Cobb, 148 Mass. 518 (20 N. E. Repr. 174); Smith v. Schiele, 28 Pac. Repr. 857; Veazie v. Parker, 72 Me. 443; Love v. Owens, 31 Mo. App. 501; Grether v. McCormick, 79 Mo. App. 325; Odell v. Dozier, 30 S. E. Repr. 813; Holmes v. Neafie, 151 Pa. 392; Hagar v. Donaldson, 154 Pa. 242; Gibson's Est., 161 Pa. 177; Restein v. McCadden, 166 Pa. 340.

The learned court below erred in refusing to take off the nonsuit, for, in any aspect of the case, the plaintiff was entitled to recover compensation for his time, labor and expense incurred in good faith in endeavoring to effect a sale of the property: Hill v. Jones, 152 Pa. 433; Jaekel v. Caldwell, 156 Pa. 266; Vincent v. Woodland Oil Co., 165 Pa. 402; Kelly v. Marshall, 172 Pa. 396.

*Richard C. Dale,* with him *O. Percy Bright* and *Simpson & Brown,* for appellee.

OPINION BY MR. JUSTICE DEAN, March 23, 1903:

Andrew M. Moore owned the Girard House, corner of Chestnut and Ninth streets, Philadelphia. On May 19, 1896, he employed James M. Seabury by the following written contract to sell it:

PHILADELPHIA, May 19, 1896.

" In the event of the sale of the property N. E. corner Chestnut Street and_Ninth Street, I promise to pay to James M. Seabury a commission of one per cent, on the amount of one million, four hundred thousand dollars ($1,400,000). I also promise to pay, in addition to the above, to James M. Seabury all the amount in excess of one million, four hundred thousand dollars.

"A. M. MOORE."

Seabury at once went to work under the agreement to make the sale and as a result of his efforts, introduced to Moore as a purchaser, one John J. McDevitt who was acceptable to the vendor. On March 20, 1897, Moore and McDevitt entered into a written agreement for the transfer of the property. The first clause of the contract describes the property, sets out Moore's agreement to transfer and McDevitt to take. The second, states that McDevitt is to obtain a loan on mortgage of the property to the amount of $750,000, out of which are to be paid liens and the balance to be paid to Moore. The third states that McDevitt is to borrow $500,000, on what is in fact, a second mortgage on the property, and is to expend in the erection of a building, $800,000. The fourth, that McDevitt is to give to Moore his bond and mortgage which would be a third mortgage, in amount of $750,000. The fifth, that as soon as McDevitt obtains the second mortgage he will pay Moore $25,000 cash. The sixth, that Moore will make a good title within thirty days from date of agreement, it being understood that he is not to deliver deed until the loans are secured by McDevitt and the mortgages are ready for execution, the sale only to be made if the loans are made and the mortgages executed according to the stipulation.

This agreement was twice extended in writing, and before the end of the last extension, on June 19, 1897, Moore agreed in writing to loan McDevitt $200,000 on mortgages to enable

him to complete the new building. About a month after the expiration of the last extension, he urged McDevitt to break off an arrangement the latter had in Philadelphia to secure a loan of $1,000,000, and to get the money in New York. Conferences and negotiations were kept up between Moore and McDevitt and with money lenders until the following December, when Moore took sick and died the next month; his executors declined to carry out the contract; McDevitt petitioned the orphans' court to decree specific performance; that court made the decree and gave McDevitt sixty days from final decree to perform his part, but he failed to do so, giving as a reason that Moore's interference with his plans, and the delay incident to obtaining the decree in the orphans' court had caused the failure. Seabury brought suit against the executors in the court below, for commissions of one per cent on $1,400,000, the selling price fixed in the agreement of May 19, 1896, between him and Moore, and also for $100,000, the excess over the selling price agreed to be paid by McDevitt.

On argument here, the claim for the excess price is formally abandoned, so that now, we have only to do with the commissions amounting to $14,000 with interest. At the trial in the court below, under the facts substantially as we have stated them, the court was of opinion that Seabury had wholly failed to sustain his claim by the evidence, and therefore, directed a nonsuit; we now have this appeal by plaintiff.

At present, we will not pass on the assignments of error to the rejection of the evidence of the record in the orphans' court and of this court, in the matter of the decree for specific performance of contract, as an interpretation of the contract between Moore and Seabury; at present, the question for us, is whether, without this record, there is enough in the case to sustain appellant's fourth assignment, alleging that the court erred in not submitting to the jury the evidence tending to establish Seabury's claim to the one per cent commission on the minimum selling price.

As to the contract of May 19, 1896, Moore clearly appointed Seabury his agent to sell the Girard House at a fixed minimum price and fixed his commission on that price. We do not understand this to be questioned by appellee's counsel. It is earnestly argued, however, that the alleged contract with McDevitt,

was in no sense such a sale as that intended by the contract with Seabury, nor does it come within the general rules determining the right of real estate agents and the liability of their principals.

In the first place, we think it clear that the rights of Seabury rest solely on his contract with Moore; he does not sue on a quantum meruit; his statement is based on that contract; no reasonable interpretation can be given it, other than that he was only to receive the excess over $1,400,000 in the event of a sale being actually consummated. It was not consummated no matter from what cause. Is there evidence from which a jury might find that he is entitled to the one per cent commissions? This depends on whether he brought to Moore a bona fide purchaser willing to buy at the minimum price. It is wholly immaterial that McDevitt did not have the money to buy; Moore did not reject the proposed purchaser for that reason. In interpreting this or almost any other contract, courts must necessarily resort to the surroundings of the parties to ascertain their real meaning and the often unexpressed reasons which prompt their conduct. It will be noticed, that Seabury undertook to find a purchaser for Moore at a fixed price; not a word was said in the contract as to the terms of payment Moore would exact from him; it is therefore necessarily to be implied, that that was a matter solely for Moore's judgment and if the purchaser did not come up to his demands in that particular, he had the right to reject him; Moore might demand cash, or part cash and short term payments; if the purchaser did not accede to these terms, that was an end of the matter; Seabury had not fulfilled his contract in such a way as entitled him to anything. Of course, Moore for the purpose of evading the responsibility of his contract could not dishonestly, or capriciously, reject the purchaser. Obviously, McDevitt was satisfactory to Moore; he had no means of his own, did not pretend to have any; he had large experience as a hotel keeper, perhaps had been successful, we do not know; doubtless, Moore knew for he was under Moore's observation, according to McDevitt's testimony, for years; hence sprang the contract between Moore and McDevitt by which Moore's price, as well as the cost of a new structure on the old site were to be raised largely by loans secured by mort-

gages on the property; McDevitt arranged to borrow $1,000,000 in Philadelphia. After the plans for the new structure were prepared, this was found to be wholly insufficient; Moore advised breaking off the negotiations in Philadelphia and urged that McDevitt go to New York for the loans; McDevitt consented and from the papers in evidence, actually found parties there willing to loan him on mortgage, as soon as the deed was delivered, $1,250,000. As Moore himself had agreed with McDevitt to loan him $200,000 on what would, practically, have been a third mortgage, McDevitt thought himself able now to proceed and complete his new hotel. Just at this juncture, while the contract with McDevitt was, by reason of the extension, in full force, Moore sickened and soon died; the executors refused to recognize the contract as still existing; then followed the proceedings for specific performance in the orphans' court, resulting in a decree in McDevitt's favor; this litigation tied up the transaction between McDevitt and the New York money lenders; at the end of it they declined to proceed further, as McDevitt alleges, and he was unable to carry out his bargain with Moore.

We do not say these facts were beyond doubt proven; we only say, there was ample evidence tending to prove them. We think under the law, it was for the jury to pass upon the evidence. It is argued, by appellee's counsel, that no binding bargain was made between Moore and McDevitt which could have been enforced, as between them; we do not pass upon this question; the claim for excess purchase money above $1,400,000 being eliminated, the only question for us is, whether Seabury brought to Moore a bona fide purchaser at that price, who was satisfactory to Moore; clearly he did do so. Moore either knew McDevitt's financial ability or was truthfully informed of it by McDevitt; this is plain from the very terms of the agreement between them; McDevitt agreed to pay more than the minimum price, in the method adopted by them; admit, that this method concurred in by both, still left an uncertainty as to McDevitt's ability to raise the amount of the purchase money, that certainly was no concern of Seabury's. Moore might well have said to McDevitt, "I will not deal in any such uncertainties;" but he did not so say; he made with him, what was in substance, an agreement of sale on terms acceptable to

him. Whether because of Moore's death or for some other reason the sale as stipulated was not consummated, it nevertheless was actually made. Seabury did not contract that he would bring to Moore a purchaser at the price of $1,400,000, who would actually pay the money according to any terms Moore might see proper to fix; he did, impliedly, contract to bring a purchaser who would pay the minimum price on the terms fixed by Moore, and plaintiff has adduced evidence to show that he did this, and that Moore was either satisfied that McDevitt could comply with the terms, or was willing to take the risk of his failure.

This ended Seabury's duty and power under his agreement with Moore. No one can say that Seabury was not injured by the failure of this peculiar sale to McDevitt; if Moore had immediately rejected McDevitt because of his inability to pay, Seabury might have found another purchaser more satisfactory; but by Moore's acceptance of McDevitt, Seabury's power was at an end; the property, so far as he was concerned, was taken by the owner out of the market at the price for which he was authorized to sell it. All the text books and all the cases cited by appellant's counsel from many states hold this to be a sale. In Keys v. Johnson, 68 Pa. 42, the owner authorized the agent to sell a farm for $16,000 cash; a buyer called on the agent, agreed to the price but desired to pay by an exchange of other land of equal value; the agent refused, but the buyer learned from him the name of the owner, and afterward went to the latter and bargained to pay him $17,000 in land. The owner refused to pay the agent's commission on the ground that he had employed the agent to sell for cash, while he himself had made with the buyer an exchange of lands, an entirely different contract. This court held, in an opinion by Justice SHARSWOOD, that the whole business of the agent was to bring the buyer and purchaser together; that he has nothing to do with the terms the owner sees fit to make; that, as it was through the agent the buyer obtained the name of the owner, the agent was entitled to his commissions. For this principle quite a number of authorities are cited. Francis v. Baker, 47 N. W. Repr. 452, has almost precisely the same facts as the case before us; the same principle is announced and the same

reasoning adopted, although with greater elaboration, as in our own case of Keys v. Johnson, supra.

While these cases and most of those cited by the learned counsel for appellant are actions of assumpsit on a quantum meruit to recover a broker's commission, the same principle is applicable to a special contract such as the one before us, for this contract goes no further than to stipulate the minimum selling price and the amount of commission; it is silent as to what kind of a purchaser Seabury shall procure, what his ability to pay, or at what times or how he shall pay the price. It can hardly be questioned that the agent brought the seller and purchaser together, that they agreed upon terms, the latter uncertain and attended with risk, a risk as well known to Moore as to McDevitt, but Moore took that risk and made the sale. The plan for consummating the sale fell through nearly three years after the original agreement was made with Seabury either through the owner's misfortune or the purchaser's fault. But, if plaintiff's evidence be believed, the agent had performed fully his part, and if the jury so believe, he ought to have a verdict. The appellant's fourth assignment of error is therefore sustained.

As to the first and second assignments of error, appellant complains of the rejection of the record of the orphans' court and of this court of the proceedings to obtain specific performance of the contract. We think the purpose of the offer was too broad; that suit was between other parties than those to this suit. The decree of the orphans' court was, that a deed should be made by the executors of Moore to McDevitt on payment or tender of the consideration of the contract; neither the orphans' court, nor this court decided that the contract with McDevitt constituted a legal sale as intended by the agreement between Seabury and Moore; it was decided that as between Moore and McDevitt, the executors were bound to make a deed when McDevitt tendered the consideration of his contract with Moore or showed an ability to perform his agreement. The issue in the orphans' court was a different one from that raised here; it depended wholly on the contract between Moore and McDevitt; this depends on the contract between Moore and Seabury, which was merely incidental to the contract between Moore and McDevitt; the orphans' court

could have enforced or refused to enforce this last contract without regard to the first one, which was a personal contract. We now decide that if Moore accepted McDevitt as a purchaser and made terms with him, Seabury earned his contract compensation ; but that is a question which the orphans' court was not called to pass upon.   Incidentally, in that proceeding. it showed how Moore and McDevitt were brought together, Yet the offer was to read the record, for the purpose of showing that the agreement between Moore and McDevitt was one of sale ; the Seabury contract would not of itself show this ; there was no reason why the court should interpret it; its interpretation could not have affected Seabury's rights as against Moore for Seabury was no party.   If the offer had been merely to show that Moore had made a contract with McDevitt which the orphans' court had decreed should be specifically enforced, and that as a precedent to the contract Seabury had brought the parties together, it would have been admissible.   This is the extent of the ruling in Aitkin v. Young, 12 Pa. 15.   All that was offered in that case was the proceeding under the act of 1818 to prove the contract in the common pleas.   It was held admissible, just as if the offer here of the record had been made to prove a contract with McDevitt.   In the opinion affirming, ROGERS, J., says, it was some proof of the facts, though not conclusive.   Here, the record was some proof of the fact that Moore had contracted with McDevitt, though even as to that, it was not conclusive ; it was not an adjudicated interpretation of the Seabury contract in any sense binding on these parties.   The appellant here must stand upon his written contract of May 19, 1896, and our interpretation of it, and the evidence tending to show that he fully performed his side of of it, that is, brought the parties together ; that the purchaser agreed to pay the minimum price, and was accepted by Moore, who made his own terms with him.   If the jury so believe, then appellant should have a verdict for his contract compensation.

The first and second assignments are overruled on the purpose disclosed in the offer ; the fourth assignment is sustained, the judgment is reversed and a procedendo awarded.

While under this view there is very little for the jury to pass upon, neither we nor the court below can determine the credibility of the witnesses, therefore this necessitates another trial.