## McCONNELL et ux. v. WALLACE.

No. 11256—Opinion Filed May 29, 1923.

Rehearing Denied Sept 25, 1923.

1. **Brokers — Commissions — Right of Action—Contract—Damages.**

M. and W., neighbors, met and engaged in a general conversation, and the conversation drifted to the discussion of the oil outlook; a well having been brought in in that neighborhood. W. said to M. that he was handling a few leases, and M. replied that he would sell him an oil and gas lease on his 150 acres of land at $4 an acre. W. replied that he did not have the money to handle it himself, but would try to find a purchaser. Some five or six weeks afterwards, W. called M. up over the telephone and told him he had a purchaser for his lease on his land. M. replied that he would be home in a few days and let the matter rest until he returned. W. finally prepared a lease and went to see M. to get him to execute it. M. refused to execute the lease. Sometime afterwards W. brought suit against M. for $900, the difference between $4 an acre and $10 an acre, the amount that W. claimed his purchaser would pay for it. Held, that W. could not recover on the alleged contract for commissions in an action against the owner of the property. First, because the conversation between M. and W. did not constitute a contract for W. to sell, and he was not entitled to receive a commission for selling. Held, further, that W. could not recover in an action against M. for commission; that W.'s remedy, if any, would be in an action against M. for damages for failure to comply with his contract to sell.

2. **Same — Validity of Contract — Statute of Frauds.**

In the case, W. cannot recover in a suit for damages for a failure on the part of M. to sell, because he had no contract, and if there was a contract, it being verbal, it is void under the statute of frauds.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garvin County; Frank Mathews, Assigned Judge.

Action by W. R. Wallace against Tilford T. McConnell and Erminie M. McConnell. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with instructions.

The defendant in error, plaintiff below, sues plaintiffs in error, defendants below (who will hereinafter be referred to by the proper names), for $900, which Wallace claims was due him as commission for procuring a purchaser for an oil and gas lease on 150 acres of land belonging to McConnell. The facts, as near as we can gather them from the record, are: That sometime in the early part of December 1916, Wallace and McConnell met at the courthouse in Pauls Valley and got into a general conversation. There was considerable excitement in that neighborhood about this time over an oil well that had been brought in nearby, and the conversation soon turned to the oil situation. Wallace, who was county judge, asked

McConnell about oil leases in the neighborhood of Stratford, where McConnell lived. After some conversation about the oil outlook, McConnell remarked to Wallace that he would sell him an oil lease on his 150 acres for $4 per acre. Wallace replied that he did not have the money to handle it for himself, but would try and find a purchaser. Nothing further was said between the parties until sometime about the middle of January, 1917, when Wallace called McConnell over the telephone and was informed by his wife that he was in Texas visiting his mother, who was quite ill. Wallace then called McConnell in Texas and told him he had a purchaser for an oil lease on his land and that he could get him $4 an acre for a lease on his land. McConnell replied that he was there visiting his sick mother, but would be home in a few days, and to let the matter rest until he got home. Wallace called him again in a couple of days and urged him to close up the deal, but McConnell again told him he could not get away for a day or two, and to wait until he got home. Something was said about the pay for the lease, and Wallace replied that the pay was all right and that he would see that he got $4 per acre for it, but never did tell McConnell what he was going to get for it, and McConnell said he would be up in a day or two and take the matter up with him. McConnell said Wallace calling him so often caused him to telephone to a man by the name of Smith, a friend of his at Stratford, and ask him about the oil situation; that Smith said leases were selling all the way from $15 to $25 per acre and advised McConnell not to sell for $4 an acre, so that when Wallace arrived with a lease for McConnell to sign, McConnell told him that he had got on to his trick and that he would have nothing to do with him; and that if he were a bad man, he would give him a damned good cussing.

This ended the negotiations, and Wallace sometime afterwards brought this suit and alleged that McConnell had engaged him to find a purchaser for an oil and gas lease on his 150 acres at $4 per acre, and that Wallace could have all over that for his commission.

McConnell denied making any such arrangements and testified that the conversation was only a casual one; and that he had no thought of employing Wallace or paying him a commission. Wallace testified substantially to what he had alleged in his petition. A trial was had by the court and jury, and the jury returned a verdict in favor of Wallace for $900. A motion for a new

trial was filed and overruled by the court and time taken to prepare and settle case-made and the case was appealed to this court. Reversed and remanded, with instructions.

Monroe Osborn and A. F. Pyeatt, for plaintiffs in error.

J. T. Blanton, for defendant in error.

Opinion by MAXEY C. We have examined the testimony of both plaintiff and defendant to determine whether McConnell was liable to Wallace for the $900 claimed by Wallace as commission for procuring a purchaser, ready, able, and willing to pay for the lease, and we think that the conversation between plaintiff and defendant falls far short of a contract constituting Wallace agent of McConnell to procure a purchaser for an oil and gas lease on McConnell's land. The alleged contract was entirely verbal and consisted simply of McConnell saying that he would sell Wallace a lease on his 150 acres for $4 an acre and Wallace replying that he did not have the money to handle it for himself, but would try to find him a purchaser. Wallace did not say how soon he thought he could find a purchaser, nor did McConnell say anything about how long he would wait on Wallace to find a purchaser. There was no consideration mentioned in their conversation; nothing said about commission, but it seems to have been just a casual conversation between two neighbors, and it seems that Wallace was not making much effort to get a purchaser, because it was something like six weeks after their conversation at Pauls Valley before he heard anything from Wallace. We are bound to conclude that Wallace was not making any extraordinary effort to find a purchaser. In fact, it would appear from the testimony that leases were selling in that neighborhood for more than $10 an acre—the price that Wallace claims his purchaser was willing to pay for it. We think that, taking into consideration the time that elapsed between the first conversation and the time Wallace called McConnell up in Texas, which was about five or six weeks, this was an unreasonable time, even if there had been a contract to find a purchaser for this lease, and are inclined to think that if there had been a contract it would have provided for some time within which Wallace was to find the purchaser. There had been an oil well brought in, and, as in most new fields, there was great activity among lease brokers to get leases, and they would naturally want action as soon as possible; and it would seem that if Mr. Wallace had considered that he had a contract, he would

have been much more active than he was, In the case of Robinson v. Oklahoma Fire Ins. Co., 55 Okla. 52, 155 Pac. 202, it was held:

"An owner of certain property contracted with a broker to procure a purchaser for the same at a certain price net to the owner, with the further agreement that the broker was to look to the purchaser for his commission. The broker procured a purchaser, able, willing, and ready to take over the property at the owner's price, and pay the broker's commissions, but the owner, without any fault of the broker or purchaser, failed to complete the contract. Held, that the broker could not recover on the contract for commissions in an action against the owner of the property; and held, further, that the broker's remedy, if any, would be in an action against the owner of the property for damages for failure to comply with his contract to sell."

And it will be seen that where the gravamen of the action is to recover commissions claimed to be due the plaintiff upon a contract to furnish the defendant a purchaser, able, ready, and willing to purchase certain property, a judgment for damages for failure on the part of the vendor to comply with the contract of sale cannot be sustained.

Another case in point is the case of Ford v. Brown (Cal.) 52 Pac. 817. In this case the plaintiff brought an action to recover commissions upon a sale of real estate made by a broker. The contract was in writing dated February 5, 1890, and gave the broker authority to sell the real estate for the sum of $15,500 or any less sum thereafter fixed by the seller, and the employment was to continue 90 days, and they agreed to pay them $500 of the purchase price when the property was sold or a purchaser found. In March, 1891, over a year after the contract was made, the brokers found a purchaser for the property who was ready, able, and willing to pay $15,250; and said agents entered into a contract with the purchaser to sell for that amount. The seller afterwards ratified the sale of the lot at the sum of $14,800 net to her, and it does not appear that the sale was consummated and the purchase price paid. The plaintiff, as assignee of the brokers, brought this action to recover the sum of $450. Conceding that the sale was made under the written contract of employment, and was only modified as to the compensation of the brokers by parol, still plaintiff could only recover $200, for the defendant approved the sale upon being informed by the brokers that the offer was $15,600. Further on in the opinion, the court said she did not agree to pay

them anything for their services. On the contrary the brokers were in effect told that she would not pay them, but they must get their pay from the purchaser. If only the contract of employment need be in writing, that would not affect the question as to whether the new contract was substituted for the old. The contract as to compensation is a most essential part of the contract of employment, and is always present in it, either expressly or impliedly. Under the contract last made it would follow that the brokers were not entitled to the compensation unless the sale was perfected and purchase money exceeding $14,800 was received.

It will be seen from these authorities that Wallace cannot recover in this case even if the contract was as he contends, because he was to get his compensation from the purchaser and not from McConnell, and the case comes squarely within the rule that he cannot recover on his alleged contract, but will be relegated to his suit for damages for a failure on the part of McConnell to sell when he had procured a purchaser as provided in said contract with Wallace. But he would be in no better position to maintain that kind of an action than he is to maintain the present suit, because there was no contract fixing the terms of the sale and there would be nothing to base a suit for damages on. Counsel for plaintiffs in error contend that if the transaction in this case had been fully consummated the defendant in error under his theory of employment—that is, that he was to receive all sums in excess of $4 per acre—could have recovered from the defendants the sum representing said excess, but the sale in the case not having been consummated, he was relegated to a cause of action for damages for the breach of the contract of sale; and said contract being within the statute of frauds, he cannot predicate a recovery thereon; and this position seems to be supported by the case of Farmers' State Bank et al. v. Cox, 41 Okla. 672, 139 Pac. 953, and Woodworth et al v. Franklin, 85 Okla. 27, 204 Pac. 452.

Taking all the testimony in this case in regard to the alleged contract, the plaintiff, Wallace, cannot recover, because the contract that he alleges was made was never consummated, and according to his own version of the contract he was to get his pay out of the purchaser and not out of McConnell, the seller; and his action must fail on that account, and he could not recover if the action should be changed to one, not on the contract, but for damages for a failure

of McConnell to sell, because as has been shown, the statute of frauds would defeat a recovery. The judgment in this case should be reversed and the case remanded to the lower court, with direction to dismiss the same; and under our version of the case, plaintiff has no cause of action. It would be useless to remand it for a new trial.

Let the judgment of the court below be reversed and remanded, with direction to set aside the judgment and dismiss the case.

By the Court: It is so ordered.