### CLARK et al. v. SEAY et al.

No. 19235. Opinion Filed Oct. 8, 1929.

Rehearing Denied Nov. 26, 1929.

Womack, Brown & Cund and Sullivan & Rice, for plaintiffs in error.

Bridges & Ivy, for defendants in error.

JEFFREY, C. E. E. Clark and Cline & Stanley, a copartnership composed of R. W. Cline and J. W. Stanley, brought this action against O. W. Seay, Clyde Seay, Wilmer Seay, and the Farmers National Bank of Waurika, Okla., to recover the sum of $2,000, alleged to be due them as a broker's commission for services rendered in securing a purchaser for an oil and gas lease on certain lands belonging to the defendants Seay. The petition alleged that the Seays, who will herein be referred to as defendants, employed plaintiffs to sell an oil and gas lease on 80 acres of land for the sum of $100 per acre, or a total sum of $8,000 net to defendants, and that said defendants agreed to pay plaintiffs all over and above that sum for which plaintiffs could sell the oil and gas lease. The petition alleged that plaintiffs introduced to the defendants the Mudge Oil Company, which company was able, ready, and willing to buy the lease for $10,000. It was further alleged that the Mudge Oil Company's offer was accepted by the defendants; a check for the sum of $10,000 was executed by the oil company; the lease was executed by the defendants, and both were placed in the defendant Farmers' National Bank of Waurika, with escrow instructions to be delivered to the proper parties upon the approval of title by attorneys for the oil company; that the examining attorneys for the oil company made objections to the title on account of certain defects, and that the defects of title pointed out were never corrected by defendants. It was further alleged that the defendants and the oil company, without the knowledge and consent of plaintiffs, went to the bank and persuaded the bank to return the check to the oil company and the lease to defendants. Plaintiffs then asked for judgment against all defendants in the sum of $2,000. All defendants filed a general denial to the petition. The cause was tried to a jury, and a verdict returned in favor of defendants. From this judgment and order overruling motion for new trial, plaintiffs have appealed.

Several assigned errors are presented and argued, but our decision on the first proposition renders it unnecessary to consider any others. Plaintiffs' first proposition is that the trial court erred in refusing to instruct the jury to return a verdict in favor of plaintiffs. A consideration of this proposition necessitates a review of that portion of the evidence relating to the terms of employment and the commission to be paid. Plaintiffs' evidence substantially established the allegations of the petition, and showed that an oil well was completed in the near vicinity of defendants' land in October, 1925. At that time, plaintiffs, who were engaged in the real estate and brokerage business, went out to the well, where they met the defendant, Clyde Seay. One of the plaintiffs inquired of him if he had any close-in acreage for sale, and he informed them of the 80 acres lying nearby, on which he would sell a lease at $100 per acre. Plaintiff Cline testified that when Clyde Seay priced the lease to them, he (Cline) asked: "Will that carry a commission," and he said, "No, we want $100 an acre out of it net," and I said, "How am I going to get my commission?" and he said, "We will give you all over $100 an acre you sell it for." At another place he testified as follows:

"A. I asked him if he would give a commission out of the $100 an acre. Q. He said he wouldn't pay a commission? A. Said he wanted $100 net."

Plaintiff Clark testified that Clyde Seay stated that he would not pay a commission, and then plaintiffs asked him if he would sell for $100 an acre and give them all over that amount they could get for it. J. E. Kendrick, who was present when the conversation was had, stated that Seay said he wouldn't pay a commission, but if plaintiffs wanted a commission they would have to add the amount to the price fixed by him. Each of the defendants stated that they did not agree to pay a commission, and Clyde Seay testified that he told plaintiffs that they would have to get their commission out of the purchaser of the lease.

The question then is, Does the contract of employment, relied upon by plaintiffs, provide for the payment of the commission by the defendants upon the broker's producing a person able, ready, and willing to buy at the price and upon the terms offered, or does

it provide for a commission only when a sale is completed, and then only when the sale price received exceeds the net price fixed by the owner? If the latter, plaintiffs were not entitled to recover in this action on their evidence standing alone. The general rule is that in the ordinary brokerage contract, if the broker has produced a person ready, willing, and able to purchase his employer's property at the price and upon the terms stipulated, and the landowner has accepted the purchaser and entered into a contract of sale, the broker is entitled to his commission, and his right thereto will not be defeated by the fact that the purchaser refused to consummate the transaction because of a defect in the landowner's title, if this fact is not known to the broker before he secures the purchaser. However, this rule is subject to modification by the parties. They may enter into any special contract regarding the payment of commissions which they may be able to agree upon. It appears that defendants did not promise to pay plaintiffs a commission, but refused to do so. All witnesses testified that Clyde Seay, who had the agreement with plaintiffs for himself and the other defendants, stated that the price quoted by him was to be net, and not carry a commission. The witnesses further testified that the contract of employment was that plaintiffs could have all over and above the price fixed by defendants that plaintiffs were able to sell the lease for. This understanding contemplated that plaintiffs should receive their commission, if any, from the purchasers of the lease, whether directly or indirectly; and that in no event should defendants owe the plaintiffs a commission until the sale was completed and a sum in excess of the net price quoted was received by the defendants. The authorities are almost unanimous in this holding: Robinson v. Oklahoma Fire Ins. Co., 55 Okla. 52, 155 Pac. 202; McConnell et ux. v. Wallace, 92 Okla. 174, 218 Pac. 672; Hopkins v. Settles, 46 Okla. 801, 149 Pac. 890; Murphy v. W. & W. Livestock Co., 26 Wyo. 455, 189 Pac. 857; Ford v. Brown et al., 120 Cal. 551, 52 Pac. 817; Seattle Land Co. v. Day, 2 Wash. 451, 27 Pac. 74; Wolverton v. Tuttle, 51 Ore. 501, 94 Pac. 961; Seabury v. Fidelity Ins., etc., Co., 205 Pa. 234, 54 Atl. 898; Antisdel v. Canfield, 119 Mich. 229, 77 N. W. 944.

In the case of Robinson v. Oklahoma Fire Ins. Co., supra, the insurance company employed Robinson as a broker to secure an insurance company to reinsure the Oklahoma company's business in Texas and Oklahoma. The terms of sale were that the Oklahoma company was to receive 30 per cent. discount on the unearned premiums as a net commission, and the broker was to receive all that the reinsurer would pay over and above the 30 per cent. commission net to the Oklahoma company. The broker procured the Citizens Fire Insurance Company of Baltimore, which company agreed to pay a commission of 32½ per cent. of the unearned premiums. The offer was accepted by the Oklahoma company, but the transaction was never closed because the Oklahoma company was unable to pay the reinsurer the amount of unearned premiums less the 30 per cent. commission to itself. It was held that the broker could not recover on a contract for commissions in an action against the owner of the property, but that the broker's remedy, if any, would be in an action against the owner of the property for damages for failure to comply with his contract to sell. In that case, it appears that the purchaser of the insurance business knew that 2½ per cent. of the commission was to go to the broker as his commission, and to that extent the case differs from the case at bar. However, we see no distinction in principle. That case is bottomed upon the fact that the selling company did not agree to pay the broker a commission.

In the case of Ford v. Brown et al., supra, the second paragraph of the syllabus is as follows:

"Real estate brokers agreed to sell property at a commission, to be paid when the property was sold or a purchaser was found. The brokers found a purchaser, and the owner authorized the sale at a net price to her, but, owing to a defect of title, the sale was not completed. Held, that under the arrangement of a net price to the owner, the brokers contracted to get their commissions from the purchaser or the purchase money, and could not recover commissions of the owner when the sale was not completed."

In the case of Seattle Land Co. v. Day, supra, it is held:

"Where a broker agrees to sell land upon condition that the owner shall first make $500 out of the sale, the broker to have the rest of the profit as his commission, he is not entitled to commission for merely finding a purchaser where the sale to such purchaser falls through on account of a defect in the title."

In Lindley v. Fay, 119 Cal. 239, 51 Pac. 333, the court, referring to the evidence, said:

"It tends to show an agreement to pay commissions out of the first money received, and no money has ever been received. Under such a contract, the broker is not entitled to compensation when he finds a purchaser ready, willing and able to purchase on the prescribed terms. There

must be a sale and a first payment to entitle him to recover."

In Wolverton v. Tuttle, supra, it is said that the use of the expression "net" to the vendor necessarily precludes any inferences that the vendor was to pay a commission in the event of a sale, unless the sum recieved should exceed the specified net price; that it could only be inferred that the brokers were either to look to the excess, if any, or to the purchasers for their commission.

The Supreme Court of Wyoming, in the late case of Murphy v. W. & W. Livestock Co., supra, speaking through Mr. Justice Potter, gives a most able and excellent discussion of the question under discussion. There most of the authorities are collated and discussed. The first paragraph of the syllabus states the general law of the case in the following words: .

"Where broker's commission is by contract made dependent upon certain conditions or contingencies, as upon the consummation of sale or payment of the purchase price, or a specified part thereof, or a net price to the owner, these stipulations will govern, and a fulfillment of the prescribed conditions is generally essential to the right of compensation."

The case of Yoder v. Randol, 16 Okla. 308. 83 Pac. 537, is cited and relied upon by plaintiffs. In Murphy v. W. & W. Livestock Co., the Yoder Case is referred to and distinguished from the cases denying a broker's right to recover under similar facts. This court has on three occasions since held that the rule relating to ordinary broker's contracts has no application to a contract such as the one in the case at bar.

As heretofore stated, the action is founded upon contract. Counsel for plaintiffs make serious objection to certain instructions for the reason that certain expresssions therein indicate that plaintiffs seek to recover damages. In their brief they say that the action was not in damages in any sense, or under any theory, but was upon contract for commissions. Under the holding in Robinson v. Oklahoma Fire Ins. Co., supra, a judgment for damages cannot be sustained where the suit is upon the contract for commissions. See, also, section 314, C. O. S. 1921; Atkinson v. Pack, 114 N. C. 597, 19 S. E. 628; 31 Cyc. 714.

We conclude that the terms of employment preclude plaintiffs' right to hold defendants liable for a commission unless the sale was consummated and the defendants received a sum in excess of the net price specified; and that plaintiffs were not entitled to recover in this action, since their evidence failed to establish such a cause of action. Having arrived at this conclusion, it would not avail either plaintiffs or defendants anything to consider the assignments of error relating to the instructions. The judgment of the trial court is therefore affirmed.

HERR, DIFFENDAFFER, HALL, and TEEHEE, Commissioners, concur.

BENNETT, Commissioner, dissents.

By the Court: It is so ordered.