MARK D. FLOWER *vs.* SARAH A. DAVIDSON and others, Executors.

## July 11, 1890.

**Real-Estate Agent—Compensation—Construction of Contract.**—The contract between the parties construed as providing that plaintiff should be entitled to a commission for a sale of defendants' property to a purchaser of his procuring, only upon the consummation of the sale by the transfer of the property and payment of the purchase-money.

**Same—Failure to Consummate Sale.**—Hence, although plaintiff procured a purchaser with whom defendants entered into a contract for the sale of the property, yet he would not be entitled to his commission if the sale was not consummated for any cause not the result of conduct on part of defendants amounting to fraud or bad faith towards him, such as an arbitrary or merely capricious refusal to carry out the contract.

**Same—Defect in Title—Good Faith of Principal.**—A refusal of defendants to convey to the purchaser a part of the property because of a discovered want of or defect in their title, or on account of a reasonable and honest doubt as to their title because of an adverse claim to the property by a third person, would not be arbitrary or capricious, or amount to fraud or bad faith towards the plaintiff.

Appeal by plaintiff from a judgment of the district court for Ramsey county, where the action was tried by *Otis*, J., a jury being waived.

*Lusk & Bunn*, for appellant.

*Williams & Goodenow*, for respondents.

MITCHELL, J. This action is brought to recover an agreed commission of $5,000 for plaintiff's sale of the St. Paul Opera-House to one Crabtree. The contract on which plaintiff relies is contained in the correspondence between the parties, which was carried on for the defendants by James H. Davidson. This correspondence culminated in the letter and accompanying postscript of August 31, 1888, in which the defendants, after extending the option to purchase the opera-house to September 5th with certain modification of terms, add: "If a sale is made by you to a customer within the time limited in the option of even date herewith, and on terms mentioned therein, the estate of W. F. Davidson will allow and pay to you, *on the completion of the transfer of said property*, a commission of $5,000 in cash; *but if for any reason a sale is not consummated, there shall be no commission paid, or any obligation whatever in the premises*. If there should be any unexpected delay, *and a sale should ultimately be consummated* to a customer whom you have found, and who has come to us through your negotiations, and on terms contained in the option, you shall nevertheless be paid the $5,000 *when the sale is actually consummated*." As this letter, which varied the terms and extended the duration of plaintiff's agency, was retained and acted on by him, it must be considered as having taken the place of any prior agreement between the parties, and as embodying the terms of their contract. Therefore plaintiff's rights to a commission must be measured by this letter. The first question is, when, by the terms of this contract, was plaintiff entitled to his commission? The general rule undoubtedly is that a real-estate agent is entitled to his commission when he finds a purchaser ready, willing, and able to purchase on the proposed terms; and, if the vendor makes a contract of sale with the proposed purchaser, his agent is entitled to his commission, irrespective of whether the contract is ever carried out by conveyance of the property and payment of the purchase-money. The same would

be true if the vendor should decline to make a contract of sale when such proposed purchaser is produced. But it is entirely competent for the parties to make a different contract, and to stipulate that the agent shall be entitled to his commission only when the contract of sale is carried out by transfer of the property and payment of the purchase-money in accordance with terms proposed. Such, we think, is the clear and plain meaning of the contract between these parties. Its language will admit of no other reasonable construction. The promise of the defendants is to pay plaintiff the commission "on completion of the transfer of said property." It is also expressly provided that, "if for any reason a sale is not consummated, there shall be no commission paid," etc. It is undoubtedly true, as. counsel suggests, that the words "sale consummated" may have one meaning under one set of circumstances, or as between certain parties, and a different meaning under other circumstances, and as between other parties; but, in view of all the provisions of this contract, it is clear to us that the expressions, "if a sale is not consummated," "and a sale should ultimately be consummated," and "when the sale is actually consummated," all have reference to the preceding one, "on the completion of the transfer of the property," which was made a condition precedent to the payment of a commission ; in short, that the expression "consummation of the sale" is used as synonymous with "completion of the transfer of the property."

According to the contract thus construed, although plaintiff procured a purchaser who entered into a contract with defendants for the purchase of the property on the proposed terms, yet he would not be entitled to his commission until and unless such contract was "completed" or "consummated" by the transfer of the property and the payment or securing of the purchase-money, in accordance with the terms upon which plaintiff was authorized to sell, or which defendants accepted as such Of course, defendants could not deprive plaintiff of his commission by a mere wilful, arbitrary, capricious, or fraudulent refusal to enter into a contract with a proposed purchaser, or to consummate or perform such a contract when made; that is, anything amounting to fraud or bad faith on the part of the vendor towards the agent. But the words "for any reason" contained in

this contract would, in our judgment, cover and include any cause for the failure of the contract of sale to be consummated or carried out not attributable to the fraud or arbitrary and. capricious act of the defendants, such as the failure or refusal of the purchaser to carry out the contract of sale, or the inability of the defendants to make good title to the property or some part of it, or the refusal of the purchaser to accept the title because for some reason it proved to be unmarketable. We apprehend it is to guard against just such contingencies as these that owners who place their property in the hands of agents or brokers for sale would make the payment of commissions conditioned on a sale being actually carried out by a transfer of the property and payment of the purchase-money. To entitle the plaintiff to recover his commission, it was therefore incumbent on him to prove that a sale to a purchaser of his procuring was complete or consummated by a transfer of the property, or that this was defeated or prevented by the fraudulent or merely arbitrary and capricious conduct of the defendants.

The plaintiff did produce a proposed purchaser, with whom the defendants entered into a contract for the sale and purchase of the opera-house, and a half interest in the bill-boards and bill-board business used and carried on in connection with the opera-house. This contract of sale has never been consummated. This the trial court finds was without any fault or neglect of defendants, and from causes for which they were not responsible, and the only remaining question is whether this finding is justified by the evidence, using the terms "fault" and "neglect" in the sense above indicated. We shall, for present purposes, treat the "Opera-House Company," the corporation which owned the opera-house, and the defendants, who held substantially all the stock of that corporation, as one and the same; for, although a corporation is a distinct entity in law from its stockholders, yet the defendants, who controlled and procured the action of the corporation, cannot shield or excuse themselves on any such ground from the consequences of an arbitrary or capricious refusal of the Opera-House Company to carry out the contract of sale. It appears that the sole reason why the contract with Crabtree was not carried out was some difficulty or controversy regarding the title of

the half interest in the bill-boards and bill-board business. It sufficiently appears from the evidence that one Mrs. Scott claimed to own this half interest; that defendants attempted to make some settlement with her, and buy her off, but were unable to do so; that they informed Crabtree of the facts, and that for that reason they were unable and refused to carry out their contract so far as the bill-boards and bill-board business were concerned, but 'expressed their willingness to go ahead and execute a conveyance of the opera-house, and make a deduction from the purchase price as compensation for the bill-boards and bill-board business. Attempts were made by defendants to effect an arrangement with Crabtree on this basis, but she was obdurate and declined to entertain any proposition except the contract as originally made, and finally declared the purchase off because of the refusal of defendants to perform their contract in the respect named. Within a day or two afterwards the defendants resolved to carry out the contract as made, by including the bill-boards and bill-board business in the transfer. Whether this change on their part was because they had in the mean time effected a settlement with Mrs. Scott, or on account of some other reason, does not appear. But it does appear that they immediately procured or induced plaintiff to go and interview Crabtree, and inform her of their willingness to carry out the contract, and to try to induce her to return to St. Paul and complete the purchase. She, however, declined to do so; whereupon the defendants brought a suit against her to compel specific performance, which is still pending. There seems to be some question as to whether the sale of the bill-boards and bill-board business was included in the subject of plaintiff's agency. But we think this is wholly immaterial, for, even if it was not, neither party is now in a position to claim anything on that account. The defendants cannot say that plaintiff was not authorized to sell this property, because they have voluntarily included it in the contract with the purchaser whom he produced. Neither can plaintiff object to the fact that defendants included it in the contract; for, so far as appears, the only purchaser whom he produced was one whose proposal to purchase included all the property which was included in the contract. We therefore think that the evidence not only failed

to show that the refusal of defendants at first to carry out the contract so far as related to these bill-boards was either fraudulent, arbitrary, capricious, or without reasonable cause; but, on the contrary, reasonably tends to prove affirmatively that such refusal on their part was because of inability to do so by reason of a want of title, or, at least, because of a reasonable and well-founded doubt in relation to their title. Therefore the evidence justified the finding of fact already referred to. This being so, the plaintiff has not earned his commission, and his action is at least prematurely brought.

While we have not followed plaintiff's assignments of error in order, yet what has been said virtually disposes of all of them, with one possible exception. The plaintiff offered to prove that the title to the bill-boards was in Mrs. Scott, which was, on defendants' objection, excluded. Taken by itself, this fact was, in our view of the case, wholly immaterial, or, at least, would not have helped the plaintiff. Had he also proved, or offered to prove, that defendants knew that fact when they employed him to sell the property, and, concealing the fact from him, induced him to go on and spend his time and labor in efforts to find a purchaser, this would have been a fraud on him which might have entitled him to recover. But no offer was made to prove this, nor was there, during the trial, even a suggestion that such was the fact. Several other questions were discussed by counsel on the argument which we have not found it necessary to consider, but have assumed, for the purposes of this decision, the law as to such questions to be with plaintiff.

Judgment affirmed.