[No. 180.   Decided June 17, 1891.]

THE SEATTLE LAND COMPANY v. BENJAMIN F. DAY.

REAL ESTATE BROKER — CONTRACT — COMMISSION — WRITTEN INSTRUMENT — EVIDENCE.

Testimony by defendant as to the length of time a bond had to run is admissible without proof of its loss, where such evidence is not offered to prove the contents of the bond, but is given as part of a conversation with the plaintiff, and for the purpose of showing defendant's version of the contract between them for a sale of the bonded land to other parties.

Where land bonded for $16,000 is placed in a real estate broker's hands for sale under contract that the holder of the bond should first make $500 out of any sale the broker might negotiate, the broker to have all profit in excess thereof, and a sale was negotiated for $18,000, which the purchaser subsequently refused to complete on the ground of defect of title, the broker is not entitled to a commission.

*Appeal from Superior Court, King County.*

The facts are fully stated in the opinion.

*V. H. Faben,* and *George D. Blake,* for appellant.

*McClure & Wheeler,* and *W. H. Thompson,* for appellee.

The opinion of the court was delivered by

SCOTT, J.—Appellant brought this suit to recover $1,500 from appellee, as a commission due for finding a pur-

chaser for certain real estate. The controversy was in relation to the contract between the parties to the action· Appellant claimed that appellee listed the property in the ordinary manner with it for sale, and agreed to pay appellant such sum as it could sell it for in excess of $16,500; that it found a purchaser ready and willing to buy the property, and pay $18,000 for it, but that upon investigation the title proved to be defective, by reason whereof the sale was prevented. Appellee disputed that the contract was as claimed by appellant, and contended that the agreement was in the nature of a joint speculation between the parties, by the terms of which appellant was to receive nothing unless the sale was actually made. He also insisted that the title was not defective, but admitted that the party procured by appellant refused to take the property on account of what he alleged and was advised was a defect therein. Appellant claimed, further, that if the title was not defective, and if the contract was as claimed by appellee, it was his duty to have entered into a contract with the proposed purchaser at the first opportunity, thereby binding him so that he would have been compelled to take the property, and as appellee did not do so, appellant was entitled to recover. The jury found a verdict for the defendant. Appellant claims that there was no evidence to sustain this verdict, and that it was entitled to recover upon appellee's own showing.

It seems that appellee had only a bond for a deed to the property, which was about to expire. This, however, was not the defect complained of. C. B. Holman, appellant's secretary, and who was acting for appellant in the premises, said in his testimony that, in making the contract, the defendant Day stated to him that he had a piece of land under bond, which he was willing to sell for $16,500 net to him, and asked him if they could procure a purchaser; that he told him he believed they could, and that thereupon Day

listed the property with them at the price mentioned, agreeing to give them all over that price they could sell it for, and assured him that the title was all right; that they sold the property through L. H. Griffith & Co. to a Mr. Blewett for $18,000, and took a check thereon for $500, which he gave to the defendant at the depot of the Lake Shore & Eastern Railway as he (Day) was about to leave for home; that Day made no objection to the sale, and assured him that it was all right; that a day or so after that—the next day he thought—the defendant was down again, and they went to the office of Griffith & Co., and there met Mr. Blewett, who then again said he was willing to pay the price for the land. Witness did not purport to give all the conversation that took place there, but admitted that Day urged Blewett to take the property "before some little preliminaries of the title were straightened out," which Blewett refused to do. On cross-examination, witness also admitted that he had tried to get the Guaranty Title & Insurance Company to insure the title to the property, and that he failed to effect such insurance. He said he did not understand the failure was due to any defect in the title, but rather to delay upon the part of the company in acting upon the proposition. There was testimony to show that the attempt to insure was prior to the negotiations with Blewett. Edward Blewett, the person to whom the sale had been made, testified that he had no conversation with Mr. Day until he had bought the land from Mr. Griffith, and then went to see Day about the title. Day said he would clear the title up or give him the money back; that he asked him how long it would take to clear it up; Day told him, and he said he would take his money back; that by the terms of the proposed purchase, as he understood them, the title was to be made satisfactory to him. The defendant testified that, at the first conversation he had

with Holman in regard to selling the land, he said to Holman that he had the property, under a bond for $16,000, from J. H. McGraw; that the bond would expire in ten days, and that, if they could sell the land within that time, he would give them half of what they (the plaintiff and Day) could make out of it; that they made an effort, and failed, and when the bond was about to expire he again saw Holman, and told him he was going to be bothered to raise the money to take the land, and that if they could make him $500 out of it, he would rather have that than nothing, and that they could have all they could sell it for over $16,500; that he did not discuss the matter of title with him; that he never said to them that the title to the land was good; that he did not pretend to have any title; that Holman saw the bond, and also an abstract of the title, which he got and gave to him, and that Holman knew all about it; that at one time he had some talk with him about getting the title insured; that Holman at that time was trying to make a pool with other parties to take the land, and was afraid something might come up, and suggested that they get it insured, each of them to pay one-half of the cost. Holman testified that he made no effort to sell the property after the negotiations with Blewett.

Appellant moved to strike the testimony of defendant as to the time the bond had to run, on the ground that it was not the best evidence. Testimony had been introduced tending to show the subsequent loss of the bond, which appellant claimed was not sufficient to admit parol proof of its contents. The court remarked that the witness had been allowed to testify to the length of time the bond had to run without objection, and denied the motion, to which appellant excepted. There was no error herein. The testimony was not offered to prove the contents of the bond, but was given in showing defendant's version of the

contract he entered into with the appellant, and as a part of the conversation which took place at the time between the 'defendant and Holman.

The defendant further testified that he accepted the $500, and, when Mr. Blewett refused to take the property, he gave it back to him; that the bond had then expired, but that Mr. McGraw took no advantage of the lapse, and at his request executed a deed to Blewett, which he (Day) tendered to Blewett, and which Blewett refused to accept. Witness testified that he always believed the title to be good, and believed so now. The deeds showing the chain of title were not sent up, but it appears from the testimony that the defect complained of was that the deed to McGraw ran to "John H. McGraw, trustee," and a question was made as to the effect of such a description. The character of the defect, however, or whether there was any defect, is immaterial, if the contract was as claimed by the defendant, and the jury must have adopted his view of it. It is not contended that there was any unreasonable delay upon the part of Day in procuring and tendering the deed to Blewett, or in undertaking to carry out his part of the agreement. It is not. claimed that any demand was made by appellant at the time Holman gave Day the check, or at any time, that he should enter into a contract with Blewett. Had there been such a demand, and an unreasonable delay or failure upon the part of appellee, appellant's position would be well taken; and this would be true, in the absence of a demand, had there been any neglect or failure of the defendant to undertake to fulfill his part of the agreement. But there was no evidence of such a failure. On the contrary, there was testimony by appellant that on the next day after defendant was notified of the bargain, he returned to town and proceeded to perform his part of it, and that at this very time—the first meeting between

Blewett and Day—Blewett objected to the condition of the title, and refused to take the property, which Day was urging him to do, or to allow Day time to remove or correct the alleged defect. Undoubtedly, if the facts were according to appellant's contention that the contract with Day was the ordinary one to sell upon commission, and that Day represented that the title was all right, or if nothing was said about the title, and appellant had no knowledge of any defect therein which would be likely to cause a non-completion of a sale it might negotiate, appellant was entitled to recover. There was substantially no controversy over the law applicable to such contracts, but the jury found that the contract was as claimed by the defendant; that appellant's pay was contingent upon the fact that the sale should be completed; and that he (Day) should first receive $500 in excess of the $16,000 he was to pay McGraw; this was a condition precedent, and there was evidence to support the verdict, and that the circumstances connected with the property were known to appellant, and the contract between it and Day was made with reference thereto; that appellant as well as Day took chances upon the sale being completed and the money received; that it was a joint speculative undertaking, by which the profits were to be divided; that the second conversation was had in the light of the prior talk upon the subject, and was connected therewith; and also in the second conversation, according to the defendant's testimony, it was stated and made a condition that he was to first make $500 out of any sale appellant might arrange for or negotiate. How could Day make anything unless the sale was completed? The subsequent conversation, according to Day's version of it, simply provided for a different recompense to be paid appellant in case of a sale, from that which was first agreed upon, and did not change the pre-

vious understanding, except as to the price appellant was to receive; nothing was said by either party tending to show anything otherwise different.

Appellant also claims that the instructions given to the jury were erroneous, but it does not appear that any exceptions were taken thereto, and consequently no point is raised as to them. Judgment affirmed.

Anders, C. J., and Stiles and Hoyt, JJ., concur.

Dunbar, J., dissents.