### L. P. VAN NORMAN v. NELLIE FITCHETTE.[1]

February 15, 1907.

Nos. 15,021—(172).

**Broker's Commission.**

A contract for the purchase of real estate provided that the same should be void, at the election of the vendor, if default should be made by the vendee in completing the purchase by making a future cash payment and executing a mortgage for the balance of the purchase price, time being of the essence of the contract; $500 cash paid upon its execution to be forfeited to the vendor. A commission contract, executed same date, provided that the vendor would pay the broker $2,500 commission if the contract of purchase should be performed by making of the payment and execution of the mortgage therein specified.

*Held*, the vendee having failed to make the deferred cash payment and to execute the mortgage, the vendor, having been ready, willing, and able to perform the contract until such default, was at liberty to take advan-

1 Reported in 110 N. W. 851.

100 M.—10

tage thereof, cancel the contract, and remove the cloud from the record by appropriate legal proceedings. Under such circumstances the commission was not earned.

**Evidence.**

The evidence is conclusive that in so doing the vendor did not act wilfully, arbitrarily, capriciously, or fraudulently, for the purpose of depriving the broker of his commission.

Appeal by plaintiff from an order of the district court for Hennepin county, Dickinson, J., overruling a demurrer to the answer. Affirmed.

*Wilson & Mercer,* for appellant.

*Tryon & Booth,* for respondent.

LEWIS, J.

Action to recover commission of $2,500, claimed to have been earned by appellant by the sale of certain real estate.

The complaint sets out the terms of the agreement of sale between respondent and the Victoria Land Company, executed May 15, 1902, the material portion of which is as follows:

> And the party of the second part, in consideration of the premises, hereby agrees to pay said parties of the first part, as and for the purchase price of said premises, the sum of twenty-three thousand dollars ($23,000) in manner and at times following, to wit: Five hundred dollars ($500) cash at the execution and delivery of this agreement; twelve thousand five hundred dollars ($12,500) in cash upon May 30, 1902, and at the making of said last-named payment to further execute and deliver, on receipt of conveyance of said premises, a mortgage thereon, with note in usual form, to the said Nellie Fitchette, one of the parties of the first part, for the sum of ten thousand dollars ($10,000). * * *

The contract further provided that, should default be made in the payment of the sum so stipulated and in the execution and delivery of the mortgage, then the agreement should be void at the election of the vendors, time being of the essence of the agreement; the $500 cash payment to be forfeited to the vendors. On the same day appellant

and respondent entered into a contract concerning appellant's commission, as follows:

> Agreement for conveyance having this day been made between Nellie Fitchette and John A. Fitchette, parties of the first part, and the Victoria Land Company, party of the second part, relating to leasehold held by said Nellie Fitchette on portion of lots one (1) and two (2), block sixty-four (64), town of Minneapolis. Now, if said contract be performed by making of payment and execution of the mortgage therein specified, the said Nellie Fitchette agrees to pay to L. P. Van Norman, or his assigns, the sum of twenty-five hundred dollars ($2,500) as commission for such completed sale and conveyance.

The complaint states that the Victoria Land Company was on May 30, 1902, and thereafter continued to be, a responsible purchaser, ready, able, and willing to pay the $12,500 in cash, and to execute and deliver, on receipt of conveyance, the note and mortgage for $10,000, and has attempted and offered to fully carry out such contract, but that respondent, with intent to deprive appellant of the benefits of his contract for commission has continually, and ever since May 30, 1902, arbitrarily, capriciously, wilfully, and fraudulently, refused to allow the Victoria Land Company to further carry out such contract, and has likewise failed and refused to enforce the contract against the Victoria Land Company.

To this complaint respondent answered, setting out in detail the history of the entire transaction, and, so far as here material, to the effect that respondent was ready and willing to perform her part of the contract to convey the premises to the Victoria Land Company by good and sufficient warranty deed, free and clear from all incumbrances, upon the performance by the company of its part of the contract, and also that for thirty days succeeding May 30 she was ready, able, and willing to perform the same, but that on May 30 the Victoria Land Company repudiated the contract without cause, notified respondent it would not perform the same, but assigned no reason therefor, and raised no objection to the title.

The answer then alleges that May 31, 1902, respondent duly served upon the Victoria Land Company a notice that the contract was can-

celed and terminated by respondent by reason of the failure and default of the company to perform the terms and conditions thereof; the cancellation and termination of the contract to take effect July 1, 1902. The answer further states that on or about July 1, 1902, while the Victoria Land Company was in default, it caused the contract to be placed on record in the office of the register of deeds of Hennepin county; that on May 30 respondent notified the company she was ready to perform her part of the contract, and submitted to the company certain forms of mortgages for the deferred payment to be executed by it, and executed a deed in accordance with the terms of the contract; that on May 31, 1902, the company notified respondent that it refused to accept the deed or perform the contract, but gave no reason therefor; that thereafter, and in August, 1902, respondent commenced an action against the company in the district court of Hennepin county for the purpose of terminating and canceling the contract upon the ground that it was a cloud upon respondent's title; that the Victoria Land Company duly appeared in that action, and July 15, 1903, filed its answer, and prayed for affirmative relief that the court decree a specific performance of the contract; that the action was tried, and the district court found that the company had no right, title, estate, lien, or interest in or to the premises, which finding was duly affirmed by the supreme court January 3, 1905; and on January 7, 1905, judgment was entered in the district court to the effect that respondent was owner of the real estate, and that the Victoria Land Company had no right, title, or interest therein.

To this answer appellant demurred, upon the ground that it appears upon its face that it does not state facts sufficient to constitute a defense. The trial court overruled the demurrer, and appeal was taken.

It appears from the answer that May 31, 1902, the Victoria Land Company was in default; that up to that time respondent was ready, willing, and able to perform her part of the contract; that, upon discovering the company did not propose to comply with the terms of its agreement, respondent, on May 31, served the statutory notice canceling the contract July 1, 1902, during which period respondent was still ready, willing, and able to perform her contract.

Appellant takes the broad ground that respondent was bound not only to refrain from taking advantage of the company's default, but

that it was incumbent upon her to enforce the contract, even to the extent of commencing an action against the company to compel specific performance; that, although the contract of sale provided that it might be terminated by respondent in case payment should not be made and the mortgage for the balance not given, yet she bound herself to appellant not to take advantage of those provisions.

This is not the ordinary contract by which the broker agrees to furnish a purchaser ready, willing, and able to buy the property upon stated terms. In those cases it has been repeatedly held that the commission is earned when such purchaser is furnished, and it is immaterial whether the sale be actually completed or not. Here the parties entered into a different kind of a contract, expressly providing that the $2,500 commission should not be earned or paid until the $12,500 should be actually paid on May 30, and the mortgage for $10,000 executed and delivered. This commission contract was entered into at the same time, and expressly refers to the contract of purchase. The parties contemplated that the purchase contract should remain in force as to all its provisions. The commission was not earned until the company performed what it agreed to.

In the contract with appellant there is no purpose, express or implied, to annul the provisions with respect to default in the purchase contract. All that appellant can claim is that during the life of the contract respondent should ever be ready, willing and able to carry out its terms. The relation of the parties is not changed by the fact that respondent brought the action to clear a cloud from the title and that the company offered to perform. At that time several months had elapsed, the conditions may have entirely changed and respondent was then under no legal obligation to the company to complete the contract. The company was in default, had no legal claim against respondent, and had no right, title, or interest in the land. In all this there is no suggestion that she acted wilfully, arbitrarily, capriciously, or fraudulently, for the purpose of depriving appellant of his commission. Flower v. Davidson, 44 Minn. 46, 46 N. W. 308.

It follows that if the company by its own voluntary act cut itself off from all rights under the contract, and respondent simply took advantage of its provisions to protect her own rights, then there was no obligation to compensate appellant under her contract with him. This

is the rule in this class of contracts. Seymour v. St. Luke's Hospital, 28 App. Div. 119, 50 N. Y. Supp. 989. See also Walker v. Tirrell, 101 Mass. 257, 3 Am. 352; Lindley v. Fay, 119 Cal. 239, 51 Pac. 333. The cases relied on by appellant (Lunney v. Healey, 56 Neb. 313, 76 N. W. 558, 44 L. R. A. 593, Parker v. Walker, 86 Tenn. 566, 8 S. W. 391, and Willes v. Smith, 77 Wis. 81, 45 N. W. 666) are different as to the facts.

Order affirmed.