## ROBINSON v. OKLAHOMA FIRE INS. CO.

No. 5997. Opinion Filed January 25, 1916.

(155 Pac. 202.)

1. BROKERS—Commissions—Right of Action—Contract—Damages.
An owner of certain property contracted with a broker to procure a purchaser for the same, at a certain price, net to the owner, with the further agreement that the broker was to look to the purchaser for his commissions for such deal. The broker procured a purchaser, able, willing and ready to take over the property at the owner's price, and pay the broker's commissions, but the owner, without any fault of the broker or purchaser, failed to complete the contract. Held, that the broker could not recover on contract for commissions in an action against the owner of the property; and held, further, that the broker's remedy, if any, would be in an action against the owner of the property for damages for failure to comply with his contract to sell.

2. SAME. Where the gravamen of the action is to recover commissions claimed to be due the plaintiff upon a contract to furnish

the defendant a purchaser, able, ready and willing to purchase certain property, a judgment for damages for failure on the part of the vendor to comply with the contract of sale cannot be sustained.

3.    **ACTION—Abolition of Distinctions—Operation of Statute.** While sec. 4650. Rev. Laws 1910, abolished the distinction between actions at law and suits in equity, as well as the forms of all such actions and suits, and provided that there should be but one form of civil action, it never intended to, and did not, abolish the distinction between an action for tort and an action on contract.

4.    **BROKERS—Action—Variance—Failure of Proof.** When the cause of action alleged in the complaint is on contract and the proof shows it to be a cause for tort, it is not a variance, but a failure of proof.

(Syllabus by Robberts, C.)

*Error from District Court, Oklahoma County;*
*Tom D. McKeown, Assigned Judge.*

Action by George H. Robinson against the Oklahoma Fire Insurance Company, a corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

*Scothorn, Caldwell & McRill,* for plaintiff in error.

*Burwell, Crockett & Johnson,* for defendant in error.

Opinion by ROBBERTS, C. This case was brought in the district court of Oklahoma county by George H. Robinson against the Oklahoma Fire Insurance Company, a corporation, to recover $1,650, as broker's commission for having procured for said company a reinsurer for its Oklahoma and Texas business. The parties will be designated plaintiff and defendant herein, as they are below. It is conceded by all parties that the plaintiff procured the Citizens' Fire Insurance Company of Baltimore, which was satisfactory to defendant, and which company was ready, able, and willing to accept and take over said insurance on the terms agreed upon by the parties, which will fully appear herein. While the terms

were agreed upon, the deal was not closed, because of the inability of the defendant to pay the reinsurance premiums.

The plaintiff's petition is a concise statement of his cause of action, the substance of which, with the pertinent parts of the correspondence attached thereto, composing the agreements between plaintiff and defendant, and also between the defendant and the Baltimore Company, is as follows:

The plaintiff, for his cause of action against the defendant, states:

"Said defendant now is, and at all times hereinafter mentioned was, a fire insurance corporation, organized under the laws of the State of Oklahoma.

"That during the months of April and May, 1912, one E. F. Tebbe was manager of defendant, the Oklahoma Fire Insurance Company, and was then and at all times mentioned in this petition, duly authorized and empowered to act for and on behalf of defendant, in the matters hereinafter set forth; and was at all other times herein authorized and empowered by the defendant, to do the things which said defendant, acting through him, did, as hereinafter set forth; that on or about the 30th day of April, 1912, said defendant undertook to negotiate reinsurance on its Oklahoma and Texas fire insurance business, through one Alfred A. Moser, of New York City, as broker, and on said day said Moser telegraphed defendant from New York City in regard to such reinsurance as follows:

" 'April 30, 1912.

" 'The Oklahoma Fire Insurance Company, Oklahoma City, Oklahoma. Officials here will not accept reinsurance proposition. If I can assist you will turn subject over to party well acquainted with market. Wire approxi-

mately unearned premiums Texas and Oklahoma; also number of agents each state and lowest commission.

" 'ALFRED A. MOSER.'

"The 'party' referred to by Moser in said telegram as the person to whom he would 'turn subject over' was this plaintiff, George H. Robinson; after receiving said telegram from Moser and on the same day, the defendant, acting by and through its manager, E. F. Tebbe, telegraphed Moser in answer as follows:

" 'OKLAHOMA CITY, OKLA., Apl. 30, 1912.

" 'Alfred A. Moser, 95 William St., New York. Texas approximately thirty-five thousand, Oklahoma thirty-one thousand. Two hundred sixty-seven agents Texas, two forty-seven, Oklahoma. Ought to have thirty-five per cent. commission.                    E. F. TEBBE,

" 'Mgr. Oklahoma Fire Ins. Co.'

"Thereafter, on the following day, Moser telegraphed defendant in answer to the telegram last set forth as follows:

" 'May 1, 1912.

" 'Mr. E. F. Tebbe, Oklahoma Fire Insurance Company, Oklahoma City, Okla. Telegram received, subject turned over to George H. Robinson, well posted matter of this kind, commission rather high account conditions, but will do best possible; mail me promptly complete list agents.                    ALFRED A. MOSER.'

"Plaintiff further alleges that the matter of procuring reinsurance for defendant was on said day turned over to and placed in the hands of plaintiff by said Alfred A. Moser, as stated in said telegram, and that, acting thereon, plaintiff undertook as broker to find and procure a responsible fire insurance company, ready, able, and willing to reinsure the defendant's Oklahoma and Texas business, and that plaintiff undertook such employment as such broker for and on behalf of said defendant, on the basis of a 30 per cent. commission net to the de-

defendant, plaintiff to receive for his services all that the reinsurer would pay over and above said 30 per cent. commission net to the defendant; that thereupon plaintiff procured a fire insurance company, ready, able, and willing to reinsure defendant's Oklahoma and Texas business upon the basis of a commission of 32½ per cent., viz., the Citizens' Fire Insurance Company of Baltimore, Maryland, and immediately upon procuring said reinsurer, plaintiff communicated the fact to defendant by wire, as follows:

"'NEW YORK, May 1, 1912.

"'DAY LETTER.

"'E. F. Tebbe, Manager, Oklahoma Fire Ins. Co., Oklahoma City, Okla. Acting on Mr. Moser's instructions I have been able to secure for you an offer of thirty per cent. commission for your entire business. Company first class and not entered in states, but will do so at once and probably appoint special agents covering the two states. Wire if acceptable and company official will come at once to examine business. Answer night letter. Doubt if better commission can be secured.

"'GEO. H. ROBINSON.'

"Thereafter, on the same day, defendant, acting through its manager, Tebbe, who was duly authorized to act for defendant in the premises, telegraphed its acceptance of said offer, as follows:

"'OKLAHOMA CITY, OKLA., May 1st, 1912.

"'Geo. H. Robinson, No. 95 William Street, New York City. We will accept offer of thirty per cent. commission for our entire business, but must have quick action. Send company representative at once.

"'E. F. TEBBE,

"'*Mgr. Oklahoma Fire Ins. Co.*'

"On May 2, 1912, plaintiff replied by telegram to defendant's telegram as follows:

" 'NEW YORK, May 2, 1912.

" 'Oklahoma Fire Insurance Company, Oklahoma City, Okla. Your night letter accepting thirty per cent. commission for your entire business is hereby acknowledged. Walter W. Alexander, Secretary, and A. D. Legg, Assistant Secretary, Citizen's Fire Insurance Company of Baltimore, will arrive Oklahoma City, five o'clock Saturday evening, prepared to go over business at once.

" 'GEO. H. ROBINSON.'

"On May 6, 1912, defendant telegraphed with reference to said reinsurance commission as follows:

" 'OKLAHOMA CITY, OKLA., May 6, 1912.

" 'A. A. Moser, 95 William St., N. Y. City. We accepted offer of Citizens' of Baltimore thirty per cent. commission net to us. Robinson must get his commission from Citizens' of Baltimore. See him for us and wire answer.      OKLAHOMA FIRE INSURANCE CO.'

"Thereafter, on the same day, Moser telegraphed defendant the following reply:

" 'May 6th, 1912.

" 'Oklahoma Fire Insurance Company, Oklahoma City, Oklahoma. Showed your telegram Robinson, he says thirty per cent. commission to you all right.

" 'A. A. MOSER.'

"Plaintiff further alleges that in accordance with the agreement between defendant and plaintiff, as evidenced by the telegrams herein set forth, the said W. W. Alexander and A. D. Legg, acting for said Citizen's Fire Insurance Company came to Oklahoma City, and called upon defendant and between May 2, 1912, and May 10, 1912, examined defendant's Oklahoma and Texas business, and as a result of such examination, said Citizens' Fire Insurance Company then and there was ready, able, and willing to reinsure defendant's Oklahoma and Texas business on the basis of a commission of 32½ per cent.,

thereby netting defendant a commission of 30 per cent. and entitling plaintiff to the surplus of 2½ per cent. as broker's commission; that defendant's Texas business then amounted to $25,000 and its Oklahoma business $31,000, making a total of $66,000, 2½ per cent. of which amounts to $1,650.

"Plaintiff further alleges that by reason of having procured for defendant, said ·Citizens' Fire Insurance Company, as such reinsurer, in accordance with the offer submitted by and through plaintiff and accepted by defendant, and by reason of the fact that said Citizens· Fire Insurance Company stood ready, able, and willing to effect a reinsurance of defendant's Oklahoma and Texas business in .accordance with defendant's said broker's agreement with plaintiff, defendant thereby became and is indebted to plaintiff in the sum of $1,650.

"Plaintiff further alleges and states that defendant has at all times failed, neglected, and refused to pay plaintiff said indebtedness of $1,650 or any part thereof, although often requested to do so, all to plaintiff's damage in the sum of $1,650.

"Plaintiff prays judgment against defendant for $1,650, with interest thereon at the rate of six per cent. per annum from this date, together with such other and further relief as it may be entitled to under the law and the facts."

Defendant answered as follows:

(1) "It admits that it is. a corporation, as set forth in plaintiff's petition, and that E. F. Tebbe is its manager."

(2) "Denies each and every other allegation in the said petition contained."

At the conclusion of the plaintiff's testimony, the defendant lodged a demurrer to the evidence on the ground that it fails to prove the cause of action; the de-

murrer was sustained, motion for new trial overruled, judgment returned in favor of defendant, and plaintiff brings error.

Three assignments of error are presented, but they raise but one question, and that is, the action of the court in sustaining the demurrer to the plaintiff's evidence.

We gather from the entire record that the contract between the Oklahoma Fire Insurance Company, which for convenience we will designate the "Oklahoma Company," and the Citizens' Fire Insurance Company, of Baltimore, which we will designate as the "Baltimore Company," was that the Oklahoma Company agreed to pay the Baltimore Company 100 cents on the dollar for all unearned premiums on policies issued by the latter, then in force and effect, in the states of Texas and Oklahoma, in consideration of which the Baltimore Company agreed to assume and carry the risk of said policies, and in effect hold the Oklahoma Company harmless from all liability on said risks (it was estimated that the unearned premiums would amount to approximately $80,000 to $70,000), and as a commission to cover the expense in securing the business the Baltimore Company agreed to pay back to the Oklahoma Company 30 per cent. of the amount to be paid by the Oklahoma Company to the Baltimore Company for such reinsurance; or, to make it shorter, and perhaps plainer, the Oklahoma Company was to deduct 30 per cent. out of the amount to be paid the Baltimore Company as "commission" for securing the original business. That is what is meant by the term "commission" used by the parties, and which, no doubt, was perfectly plain to them as common parlance

used in such business. It was agreed and understood, and so alleged in plaintiff's petition, and established by the proof, that the 30 per cent. "commission" was to be net or "clean" to. the defendant, and that the Baltimore Company agreed to pay 2½ per cent. of the amount of the unearned premiums to the plaintiff as commission or compensation for his services in consummating the deal. Quoting again from the petition, plaintiff states that he "undertook such employment as such broker for and on behalf of the Oklahoma Fire Insurance Company, on the basis of 30 per cent commission, net to the defendant; the plaintiff to have and receive for his services all that the reinsurer would pay, over and above the 30 per cent. commission net to the defendant." Before the deal was closed the defendant wired to Moser:

"We accepted offer of Citizens' of Baltimore thirty per cent. commission net to us. Robinson must get his commission from Citizens' of Baltimore. See him at once and answer us."

To this wire Moser replied on the same day:

"Showed your telegram to Robinson; he says thirty per cent. commission to you all right."

In further corroboration of the fact that there was no agreement on the part of defendant to pay plaintiff for his services, and that he was to look to the Baltimore Company for pay for his commission, A. D. Legg, assistant secretary and agent of the Baltimore Company, in closing the deal in Oklahoma City, testified as follows:

"Q. In reference to the 2½ per cent. commission to be paid Mr. Robinson, will you state what arrangements was made for that? A. It was understood that this commission would be added to the commission we would pay for the business. Q. Will you state how much the Citi-

zens' Fire Insurance Company was to pay Mr. Robinson? A. 2½ per cent. of the unearned premiums. Q. And what was that compensation to be for? A. Bringing about the reinsurance deal. Q. Is that the customary commission paid for reinsurance? A. Yes; it is the prevailing custom."

In the face of all these facts, plaintiff brought this action, as stated by counsel in their brief, "to recover $1,650 as broker's commission for having procured for defendant, Oklahoma Fire Insurance Company, a reinsurer of its Oklahoma and Texas business," and in his petition he alleges that defendant became indebted to him in that sum for securing the Baltimore Company, able, ready, and willing to effect a reinsurance of defendant's business. All this shows that plaintiff was standing on and brought this action to recover on contract, when the entire record shows that there never was such a contract, either express or implied, between the parties.

The case of *Ford v. Brown*, 120 Cal. 551, 52 Pac. 817, appears to be in point, wherein it is said:

"Real estate brokers agreed to sell property at a commission, to be paid when the property was sold or a purchaser was found. The brokers found a purchaser, and the owner authorized the sale at a net price to her, but, owing to a defect of title, the sale was not completed. Held, that under the arrangement of a net price to the owner the brokers contracted to get their commissions from the purchaser or the purchase money, and could not recover commissions of the owner when the sale was not completed."

So likewise in the case of *Seattle Land Co. v. Day*, 2 Wash. 451, 27 Pac. 74, the court says:

"Where a broker agrees to sell land upon condition that the owner shall make $500 out of the sale, the broker

to have the rest of the profit as his commission, he is not entitled to commission for merely finding a purchaser, where the sale to such purchaser falls through on account of a defect in the title."

Under the actual facts as they exist in the case, the plaintiff possibly might have had an action sounding in tort against the defendant, based on the charge that plaintiff suffered an injury, and was damaged by reason of the defendant's failure to comply with the contract made by plaintiff with the Baltimore Company, at the defendant's instance, request, and authority.

The case of *Atkinson et al. v. Pack,* 114 N. C. 597, 19 S. E. 628, cited by counsel, seems to be clearly against the contentions of the plaintiff. As said before, the instant case is an action to recover a debt based upon contract, while the case cited by counsel, *supra,* is an action for damages for breach of contract. The headnotes of that case, as well as the opinion, plainly show that fact; they are as follows:

"A real estate broker negotiating a sale of land for a person who agreed with him, in writing, to convey it to the intending purchaser, from whom he was to receive his commission, may maintain an action for breach of contract upon refusal of such person to convey, upon showing that the purchaser was ready to take and pay therefor.

"In such case the measure of plaintiff's damage is the amount he would have received as commission from the intending purchaser, had defendant complied with his contract."

In the body of the opinion this is clearly shown from the following language:

"In the course of their business the plaintiffs negotiated with the defendant for the sale of the property named to one Harding, at a price agreed to be paid on a day certain, the plaintiffs' commissions upon said sale to be paid by the purchaser, Harding. Every detail of the transaction seems to have been arranged, and upon the day set for the completion of the sale, the plaintiffs, during business hours, notified the defendant that Harding was ready and willing to comply with the terms of sale; whereupon, without giving any valid reason therefor, defendant declined to fulfill his contract. This action is brought, not to recover commissions out of defendant, for it was expressly stipulated that defendant was to receive $25,000 net for the land, and that plaintiffs must look to Harding for their commissions. But the action is brought to recover damages for the nonperformance of a contract, the evidence of which was in writing, made with plaintiffs, that defendant would sell the said land to Harding at the price stated. The defendant seems to admit that there was a breach of contract on his part with some one, but he contends that it was with Harding, and that the latter is the party responsible to plaintiffs for their commissions. But there were plainly two contracts made by plaintiffs—the one with defendant, the effect of which was that plaintiffs would provide a purchaser of the land at the agreed price, commissions to be paid by the purchaser; the other with the purchaser that he would pay the plaintiffs' commissions upon the conclusion of the sale. If through the negotiation of plaintiffs the parties had been brought together and had concluded the trade between them, the plaintiffs would have been entitled to their commissions from Harding, the purchaser, according to the terms of their contract. But this action is for damages. The gravamen of the charge is that defendant committed the wrong and injury upon plaintiffs by a refusal, without cause, to comply with his contract with plaintiffs to sell the land to plaintiffs' principal, with the distinct understanding that plaintiffs were to be compensated by the purchaser. The natural effect and conse-

quence of this refusal by defendant was the loss by plaintiffs of their commissions; and, in arriving at the measure of damages, his honor (trying the case, by consent, without a jury) considered the amount of commissions agreed upon. The case of *Cavender v. Waddingham,* 2 Mo. App. 551, is very much like our own. There the plaintiffs were employed by defendant to purchase for him a certain lot of land, but the plaintiffs' commissions were to be paid by the vendors. Plaintiffs made the negotiations, procured the deed to be made to defendant according to the contract, and tendered the same, demanding the purchase money for the vendors. Defendant refused to comply with this contract, and plaintiffs sued him to recover damages for the loss of their commissions by reason of the refusal by defendant to comply with the contract. It was held that plaintiffs had shown good cause of action against defendant.

"There having been, then, a contract between plaintiffs and defendant, and defendant having refused to perform his part of it without fault of plaintiffs, they are entitled to recover as damages such sum as will compensate them for the loss sustained by the breach of contract by defendant. The measure of this damage is easily ascertained—the amount of commissions which plaintiffs would have been entitled to receive from the purchasers if the contract had been carried out."

The contention of defendant in the case just quoted was, that the plaintiff could recover on contract for commissions, and the court said:

"This action is brought, not to recover commissions out of defendant, for it was expressly stipulated that defendant was to receive $25,000 net for the land, and that plaintiffs must look to" the purchaser "for their commissions. But the action is brought to recover damages for the nonperformance of a contract, * * * that the defendant would sell the said land to Harding at the price stated."

The court further says:

"If through the negotiation of plaintiffs the parties had been brought together and had concluded the trade between them, the plaintiffs would have been entitled to their commissions from Harding, the purchaser, according to the * * * contract. But this action is for damages. The gravamen of the charge is that defendant committed the wrong and injury upon plaintiffs by a refusal, without cause, to comply with the contract."

As above stated, the case just quoted was an action, brought by the broker, against the owner of the property for tort, to recover damages for breach of contract. Counsel for defendant in that case seems to have contended that defendant was not liable for the reason that it was agreed by all the parties that the purchaser was to pay the commissions, and that there was no agreement on the part of the defendant (owner) to pay for such services.

The court conceded the contentions of the defendant to be correct, but said, in substance:

"This is not an action on contract to recover commissions. If it was, the plaintiff could not recover, because there would be a fatal failure of proof, in that there was no evidence tending to establish such an agreement, but this is an action for damages for breach of contract on the part of the defendant for failure to comply with his contract to sell."

The case at bar is the converse of that case, but the principle is the same. Nor can this be classed as a variance. It is a failure of proof. Section 4786, Rev. Laws 1910, provides, in substance, that when the allegations of the claim or defense to which the proof is directed are unproved in their general scope and meaning, it is not to be

3—55

deemed a case of variance, but a failure of proof. The rule laid down in Cyc. vol. 31, p. 714, is:

"Where a cause of action *ex contractu* is alleged, and the evidence shows merely a tort, there is a failure of proof."

"When the cause of action alleged in the complaint is on contract, and the proof shows a cause of action for a tort, it is not a variance. * * * but a failure of proof." *Butler v. Livermore*, 52 Barb. (N. Y.) 570; *Walter v. Bennett*, 16 N. Y. 250; *Ransom v. Wetmore*, 39 Barb. (N. Y.) 106.

We are not unmindful of the tendency to disregard the technical rules in regard to pleadings, but this liberality should not be stretched to the extent of overruling entirely that ancient, but still wholesome and necessary, rule that:

"The evidence must correspond with the allegations, and be confined to the point in issue."

While section 4650, Rev. Laws 1910, abolished the distinction between actions at law and suits in equity, and the forms of all such actions and suits, and provided that there should be but one form of civil action, it was never intended to, and did not, abolish the distinction between an action for tort and an action on contract.

Applying these rules to this case, it is evident that the judgment should be affirmed.

By the Court: It is so ordered.