## UNITED SALES AGENCY v. LUCK LAND COMPANY.[1]

January 19, 1923.

No. 23,202.

**Contract with real estate broker not changed by subsequent agreement.**

1. Plaintiff, a real estate broker, earned the agreed commission when it produced one who executed a contract to purchase defendant's lands on terms satisfactory to it, the contract being executed also by defendant; and a subsequent agreement between plaintiff and defendant respecting certain additional and gratuitous services, beneficial to defendant, should not be construed as affecting the commissions already earned or changing the terms of the original employment.

**Decision affirmed.**

2. The findings are sustained by the evidence and no error was made by the court in the trial.

Action in the district court for Mahnomen county to recover $800, broker's commission in the sale of real estate. The case was tried before Grindeland, J., who when plaintiff rested denied defendant's motion for judgment of dismissal, made findings and ordered judgment in favor of plaintiff for the amount demanded. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Marshall A. Spooner*, for appellant.

*George G. Chapin* and *E. A. Countryman*, for respondent.

[1] Reported in 191 N. W. 897.

HOLT, J.

Plaintiff, a corporation doing business as a real estate broker, recovered a commission for making a sale of 160 acres of land in Mahnomen county for defendant, a corporation. From the order denying a new trial it appeals.

In January, 1919, plaintiff obtained from defendant the right to sell its lands, according to a list of descriptions and prices which it furnished plaintiff. In the letter giving the right to sell these lands, defendant stated that "there was a discount on this price list of $5.00 per acre, so our net price is $5.00 under the list. Therefore, whatever you sell the land for above our net price is your commission." Defendant represented itself as the owner and in control of the lands listed and able to give good title thereto.

In the latter part of April, 1919, plaintiff brought one Hyde from St. Paul to Mahnomen county as a prospective purchaser. He selected a farm of 160 acres from the list referred to, priced therein at $55 per acre. The price and terms were satisfactorily arranged, and on May 5, 1919, a contract for the purchase of the farm was signed by Hyde and defendant. Later it developed that defendant did not have the fee title, but merely a contract to purchase this farm from one Mrs. Austin. Defendant claims plaintiff was informed of this condition when Hyde was shown the land. This plaintiff denies. When the purchaser ascertained that defendant did not have title and that some time would be required to obtain it, he apparently desired some protection. Defendant then prepared a contract for the sale of this land, which was dated June 5, signed by it and Hyde, and placed it in escrow in a bank in St. Paul to await title in defendant, and Hyde placed in escrow the assignment of a note and mortgage of $2,500, as the down payment called for in the contract of May 5. There is nothing showing an agreement to abandon the contract of May 5, except as it may be inferred that, if the escrow contract was finally delivered, it was to take the place of the former, for it was deposited with the escrow agreements of June 5.

By a separate contract dated June 5, 1919, plaintiff promised defendant to sell or discount the note and mortgage defendant was to

receive, and, from the proceeds, turn over $1,700 to defendant, the balance to be retained by plaintiff as its commission. Eventually Mrs. Austin refused to carry out her contract with defendant, and it appears that she could not be forced to, since an undivided interest in the land belonged to her minor children, and, as land was rising in value, she deemed it unwise to obtain consent from the probate court to sell the minors' interest. So the deal between Hyde and defendant fell through. Plaintiff at all times was ready to discount or negotiate a sale of the $2,500 note and mortgage which had been assigned in escrow by Hyde, who also was able and willing to complete the purchase according to the terms agreed upon.

There can be little doubt but that plaintiff would have been entitled to commission under the original proposition to it contained in Exhibit M, written by defendant to plaintiff before the contract, for the purchase of this farm, of May 5, 1919, was executed both by Hyde and defendant. But the contention is that, after Mr. Hyde was produced and terms of sale satisfactory to both seller and purchaser were made, plaintiff learned that defendant did not have good title, and then, with that knowledge, executed Exhibit 1, the former contract for services was merged in Exhibit 1, and that thereunder commissions were not earned. Exhibit 1 was prepared by defendant and sent to plaintiff for execution in a letter dated June 4, 1919, reading:

In re Hyde we will say that we have taken steps to have the tract of land transferred to us in proper shape. We have drawn up an escrow agreement in triplicate and are herewith enclosing the same to you. Kindly fill in the proper description of the property covered by the mortgage in this and then take the matter up with Mr. Hyde and have him sign the agreement if it is satisfactory. Then return this agreement to us with the contracts and the escrow agreement and proceed to close up the deal.

As this deal will drag on for some little time yet we thought it well to reduce our agreement regarding your cashing in this mortgage to writing and we have prepared such an agreement in duplicate and are herewith enclosing the same for your execution. If

you will sign this and return it with the other papers we will get this matter into shape as soon as we can.

Plaintiff procured the signature of Hyde to the triplicate agreement to purchase the land and also to an assignment of the note and mortgage of $2,500 referred to in the letter, and sent them to defendant. The duplicate of Exhibit 1 was also signed by plaintiff and defendant a few days later. It reads:

This agreement made and entered into this 5th day of June, 1919, by and between United Sales Agency, Inc., party of the first part and Luck Land Company, a corporation, party of the second part, Witnesseth:

That whereas one Edward Hyde has through the efforts of said first party entered into negotiations with said second party for the purchase of the east half of the west half of section twenty in township one hundred forty-three north of range forty-one west of the 5 P. M. in Minnesota, and whereas the contracts for deed in said transaction are being placed in escrow with Capital National Bank of St. Paul to be held under certain conditions, and whereas the said Edward Hyde is assigning to said second party a certain mortgage for $2,500, as first payment under said contract.

Now, therefore, it is hereby agreed by and between the parties hereto that upon the delivery of the mortgage and assignment thereof to said second parties, the first party hereby agrees that he will convert said note and mortgage into cash and will immediately remit to said second party the sum of $1,700.00 with interest at 6 per cent from date of Hyde contract, and will retain the balance thereof as full payment of the commission which will be by them earned by the completion of such sale.

The memorandum of the trial court discloses that he considered plaintiff had fully earned the commission when the contract of May 5 for the sale of this farm was signed by Hyde and defendant; and that whatever plaintiff undertook to do thereafter was gratuitous work to assist defendant in carrying out a deal that had got into a tangle solely through defendant's fault. It had not title to the

land it had sold and could not procure title to the whole by any legal proceeding:

We think the view of the court below is warranted by the whole record. It must be assumed that the trial court found that up to May 5, when the first contract was signed, both Hyde and plaintiff believed defendant had good title to the land in question. As well in the list furnished plaintiff as in its letters, defendant reiterated the claim that it was the owner of the land and in position to convey good title. Such assertions of ownership in respect to this 160 acre farm may be considered a fraud upon plaintiff. In Flower v. Davidson, 44 Minn. 46, 51, 46 N. W. 308, the court with reference to such a situation says: "Had he [plaintiff] also proved, or offered to prove, that defendants knew that fact [that the title to part of the property was in another] when they employed him to sell the property, and, concealing the fact from him, induced him to go on and spend his time and labor in efforts to find a purchaser, this would have been a fraud on him which might have entitled him to recover."

And again when the whole situation is considered together with the tenor of the letter of defendant inclosing Exhibit 1 and asking plaintiff to sign, it appears to us that the sole purpose to be achieved by that agreement was to bind plaintiff to sell or dispose of the note and mortgage to be assigned by Hyde, so that defendant could get therefrom $1,700 cash and interest thereon from the date of the contract of sale, and that, with whatever more the note and mortgage brought, plaintiff would be content to accept as full payment of its commission.

Plaintiff produced a purchaser ready, able and willing to buy this land. Defendant accepted him, and he signed two successive contracts prepared by defendant to so do. This purchaser became absolutely bound by the first, and would have been by the second had defendant performed its part so as to cause it to be delivered out of escrow. The sale failed only because defendant could not convey the good title it represented it had when plaintiff was employed, and which it asserted it could procure without question when plain-

tiff was requested to sign Exhibit 1. We do not think the facts in this case bring it within these cases cited by appellant, viz.:

Seattle Land Co. v. Day, 2 Wash. 451, 27 Pac. 74, where the jury found the defendant's version as to the terms of the contract to pay the plaintiff commission to be true and not that of the plaintiff, and the court says [at page 456]: "Undoubtedly, if the facts were according to appellant's contention that the contract with Day was the ordinary one to sell upon commission, and that Day represented that the title was all right, or if nothing was said about the title, and appellant had no knowledge of any defect therein which would be likely to cause a noncompletion of a sale it might negotiate, appellant was entitled to recover."

In Ford v. Brown, 120 Cal. 551, 552, 52 Pac. 817, the court says: "She [defendant] did not agree to pay them [plaintiffs] anything for their services. On the contrary, the brokers were in effect told that she would not pay them, but they must get their pay from the purchaser." There the agent was to get for his commission whatever was procured from the purchaser over the net price going to the owner.

Robinson v. Oklahoma Fire Ins. Co. 55 Okla. 52, 155 Pac. 202, does not appear to be in point since by the terms of the contract the broker's commission was to be paid by the purchaser and not by the defendant, the court holding the proof showed an action for tort and not on contract.

Appellant relies upon Flower v. Davidson, supra, Van Norman v. Fitchette, 100 Minn. 145, 110 N. W. 851; Goodwin v. Siemen, 106 Minn. 368, 118 N. W. 1008; Jacobson v. Rotzien, 111 Minn. 527, 127 N. W. 419, 856; C. H. Graves & Co. v. Cook, 115 Minn. 34, 131 N. W. 854; Appleby v. Dysinger, 137 Minn. 382, 163 N. W. 739; and Huntley v. Smith, 153 Minn. 297, 190 N. W. 341. In each of which the agreement with the broker showed his commission to be dependent either upon a consummation of the sale, or payable out of the moneys to be paid by the purchaser. Little v. Rees, 34 Minn. 277, 26 N. W. 7, does not support any contention of appellant. As the court found plaintiff's commissions earned when defendant made the contract of May 5 with Hyde, the Exhibit 1 should not be con-

strued as an agreement governing the commissions or modifying the original arrangement. This view also disposes of the contention that the action should have been one for damages on the ground that defendant's failure to acquire title prevented plaintiff from earning the promised reward. We think the findings of the court are sustained by the evidence. No error was committed in admitting Exhibits M and O, the letter giving plaintiff the right to sell and the list of lands including the 160 acres involved here. The ruling excluding a special contract relating to how and when the commissions for making a sale of a tract of land in March, 1919, was to be paid was clearly right.

The order is affirmed.